## John A. Sawyer *vs.* Daniel F. Long.

### Androscoggin.    Opinion August 17, 1894.

*Chattel Mortgage.    After-Acquired Property.    Trade Fixtures.*
*R. S., c. 111, § 5.*

A chattel mortgage does not pass the legal title in after-acquired property to the mortgagee without some new act sufficient to accomplish the purpose, like a delivery to and retention of the same by the mortgagee or a confirmatory writing properly recorded and the like. Things that have a potential existence are an exception to the rule. Equity, however, creates a lien upon the *res* when produced or acquired, leaving the legal title still in the mortgagor, who, by some act, may ratify the grant as by delivery of the property, when the legal title becomes complete in the mortgagee; and without such confirmatory act, equity will sometimes enforce the mortgage, when the balancing of equities requires it.

If a mortgage of chattels stipulates that the mortgaged property may be put on sale by the mortgagor, who is required to keep the security good by applying the proceeds of sale to the purchase of new articles of like kind to those sold, the chattels so purchased become substituted for those sold at the instance and under authority of the mortgagee, so that the legal title to them may be said to pass to him as effectually as if he had himself made the sale by assent of the mortgagor and with his own hand, replenished the *res.* The mortgagor by doing so simply executes a power, performs a trust created

by the mortgage, and thereby neither depletes the security nor defrauds his other creditors.

The doctrine of equitable estoppel, upon which chattel mortgages have been held to cover after-acquired property mentioned in the mortgage, stops with the mortgagor and his assignee in insolvency or bankruptcy, and does not apply to attaching creditors or *bona fide* purchasers.

A mortgage was given to secure $275, on the debtor's stock and fixtures then in his store; and he covenanted to keep said stock and fixtures up to a value of not less than $500. The mortgage also provided that the mortgagor might, in the usual course of trade, sell said stock, but not the fixtures, and with the proceeds of said sale replace said stock with other stock of like kind, which new stock should be subject to the mortgage. The mortgage was recorded and possession retained by the mortgagor. *Held*, that the defendant being a *bona fide* purchaser, and no estoppel arising as to him, the plaintiff mortgagee may recover so much of the stock replevied as he has shown was in existence at the date of the mortgage and that purchased with the proceeds of articles sold and substituted therefor, and no more.

The term fixtures may include chattels permanent in character, as not being the object of sale, of trade or manufacture, but subjects to facilitate those purposes, and aid in the convenience of business.

*Held*, that those fixtures only that were in the store, when the mortgage was made, passed by it.

The mortgagor had bargained for and received a soda fountain under a writing dated at Boston, Mass., that was in effect a conditional sale. *Held*, that, if it was a Massachusetts contract, it is subject to redemption under the laws of that State. *Also*, if it was a Maine contract, that as notes were given for the price of it, the agreement not being made and signed as part of the notes, it is void altogether under R. S., c. 111, § 5.

*Allen* v. *Goodnow*, 71 Maine, 424, approved.

ON REPORT.

This was an action of replevin of stock and fixtures. Both parties claimed under conveyances from Philip F. Morrison. The plaintiff obtained his mortgage July 1, 1889, and the defendant became a purchaser from Morrison's assignee, May 5, 1891. The mortgage was foreclosed March 9, 1891; sixty days redemption expired May 8, 1891. Date of writ June 3, 1891.

Other facts are stated in the opinion.

*Tascus Atwood*, for plaintiff.
*Savage and Oakes*, for defendant.

SITTING: PETERS, C. J., WALTON, VIRGIN, LIBBEY, FOSTER, HASKELL, JJ.

HASKELL, J.  Replevin.  The plaintiff claims as mortgagee, and the defendant as purchaser from the assignee for the benefit of creditors of the mortgagor.  The case must be decided at law, not in equity.  The mortgage was given to secure $275 on, "my stock and fixtures in the store now occupied by me," &c. . . . "and I covenant to keep said stock and fixtures up to a value not less than $500.  It is agreed that [the mortgagor] may, in the usual course of trade, sell said stock, but not the fixtures, and with the proceeds of said sale replace said stock with other stock of like kind, which new stock shall be subject to this mortgage."  The mortgage was recorded.  Possession was not taken by the mortgagee, but retained by the mortgagor and went to his assignee, who transferred the same to the defendant as purchaser of the assignee's interest in the property.

I.  As to the stock.  In this State it has uniformly been held that a chattel mortgage does not pass the legal title of after-acquired property to the mortgagee, without some new act sufficient to accomplish the purpose, like a delivery to and retention of the same by the mortgagee, or a confirmatory writing properly recorded and the like.  *Griffith* v. *Douglass*, 73 Maine, 532; *Pratt* v. *Chase*, 40 Maine, 269; *Morrill* v. *Noyes*, 56 Maine, 458; *Hamlin* v. *Jerrard*, 72 Maine, 77.  The reason is, that, as the after-acquired property is not in existence to be conveyed by the mortgage, title to it cannot be transferred in advance, for, "a man cannot grant or charge that which he hath not."  Things that have a potential existence are an exception to the rule.  *Morrill* v. *Noyes*, *supra*, and cases cited.  Equity, however, creates, "a lien upon the *res* when produced or acquired, leaving the legal title still in the grantor, who may by some act ratify the grant, as by delivery of the property, and then the legal title is complete in the vendee."  *Edwards* v. *Peterson*, 80 Maine, 372; *Everman* v. *Robb*, 52 Miss. 653.  And without such confirmatory act equity will sometimes enforce the mortgage, when the balancing of equities shows that it should be done.  *Mitchell* v. *Winslow*, 2 Story, 630; *Holroyd* v. *Marshall*, 10 H. L. 223.

If a mortgage of chattels stipulates that the mortgaged

property may be put on sale by the mortgagor, who is required to keep the security good by applying the proceeds to the purchase of new articles of like kind to those sold, the chattels so purchased become substituted for those sold at the instance and under authority from the mortgagee, so that the legal title to them may be said to pass to him as effectually as if he had himself made the sale, by assent of the mortgagor, and with his own hand replenished the *res.* The mortgagor by doing so simply executes a power, performs a trust created by the mortgage, and thereby neither depletes the security nor defrauds his other creditors. *Abbott* v. *Goodwin,* 20 Maine, 408.

*Allen* v. *Goodnow,* 71 Maine, 424, was decided upon this ground, although the controversy was between the parties to the mortgage, and the *dictum* of the court limits the doctrine to them. But if the doctrine be sound, and we think it is, it cannot logically be so limited, for when the title has passed to the mortgagee it becomes paramount to any claim under the mortgagor, either of attaching creditor or purchaser. Having no legal title he can neither impart nor convey one. *Goss* v. *Coffin,* 66 Maine, 432.

The doctrine of equitable estoppel, upon which these cases have usually been decided, does not go beyond the mortgagor and his assignee in insolvency or bankruptcy; but as to these parties remains in full vigor to preclude them from disputing that the newly-acquired property was not purchased and paid for with the proceeds of sales instead of on credit or otherwise. *Deering* v. *Cobb,* 74 Maine, 332; *Williamson* v. *Nealey,* 81 Maine, 447.

The defendant being a *bona fide* purchaser, and no estoppel arising as to him, the plaintiff may recover so much of the stock replevied as he has shown a title to under the doctrines of this opinion, viz., that in existence at the date of mortgage and that substituted for articles sold by purchase from the proceeds of sales, and no more.

II. As to the fixtures. Those articles only that were in the store when the mortgage was made passed by it. The word fixtures, in the sense used by the parties, means chattels of a

permanent nature in contradistinction from those kept for sale, such as were incident to the convenient use of the store. As said by Lord Mansfield, "accessaries necessary for the enjoyment of the principal." 1 H. Bl. 260. In other words, chattels known as, "fixtures of trade," when placed for use, partake of the realty, because used with it. They may be attached to it or placed upon it. If removed by the tenant during his term, they remain chattels; but if left, belong with the freehold as permanently fixed to it. Chattels of this sort, while in use, in position, have always been spoken of as "fixtures." Some were removable, others were not. "The right between landlord and tenant does not altogether depend upon this principle, that the articles continue in the state of chattels; many of these articles, though originally goods and chattels, yet when affixed by a tenant to the freehold, cease to be goods and chattels by becoming part of the freehold; and though it is in his power to reduce them to the state of goods and chattels again by severing them during his term, yet until they are severed they are part of the freehold." *Lee* v. *Risdon*, 7 Taunt. 191. Lord Holt speaks of "vats set up in relation to trade;" *Poole's case*, 1 Salk. 368; and Lord Kenyon, "of erections for the benefit of trade or manufacture." *Dean* v. *Allaley*, 3 Esp. 11. These decisions recognize a class of chattels known as "trade fixtures." They are what Lord Hardwicke calls mixed cases, "between enjoying the profits of land and carrying on a species of trade." *Lawton* v. *Lawton*, 3 Atk. 13.

Strictly, the word fixture relates to a freehold. It refers to a chattel transformed into land by assimilation. Commonly it refers to a chattel used with land, that may be or become a part of the freehold or not as conditions may require. Sometimes it is used to indicate articles of furnishing or furniture necessary or convenient for the carrying on of business, trade or manufacture, in contrast and to distinguish them from merchandise dealt in or goods manufactured. These uses have naturally enough grown from the expression, "fixtures of trade or manufacture," that came into use to distinguish erections of that description

that might be removed by the tenant of land during his term and not become irretrievably fixed to the freehold; as Lord Kenyon said : "The law will make the most favorable construction for the tenant where he has made necessary and useful erections for the benefit of his trade or manufacture, and which enable him to carry it on with more advantage." *Dean* v. *Allaley, supra*.

It is easy to see, therefore, how the meaning of the word "fixtures" has come to include chattels permanent in character, as not being the objects of sale, of trade or manufacture, but subjects to facilitate those purposes, and aid in the convenience of business. The meaning of the word must be considered in relation to the subject matter referred to by the parties using it. When used in the sale of chattels it would naturally apply to chattels. When in relation to land or a freehold, it would naturally apply to those things that were or were to be or become a part of the freehold.

In the case at bar, the mortgagor wished to secure a debt upon the goods and chattels in his store. He conveyed them as "stock and fixtures," manifestly meaning to include goods on sale and the shop appliances used in the business. He had some meaning for the word "fixtures." He could not have meant articles that had become fixed to the building, that he could not remove. He must have meant articles that he could remove, and we know of no other rule by which to determine this case than to consider the meaning intended by the parties to the mortgage. The authorities are so numerous and conflicting that it would be useless to try and extract from them any hard and fast rule that shall govern all cases. It must be noticed that the issue here is not between an owner of land and the tenant, or between parties that hold that relation. It is between vendor and vendee of chattels; and the question is, what chattels, if any, were sold. Like all contracts, that intention of the parties must govern that is permissible from the language expressed in the document of sale. Chattels that had become fixed and a part of the freehold were sold as chattels by the tenant who affixed them, as against his assignee in bankruptcy, although the

owner of the freehold might well have held them as a part of the realty.  *Re McKay,* 1 Lowell, 566.

III.  The mortgagor had bargained for and received a soda fountain under a writing dated Boston, Mass., that in effect was a conditional sale.  If a Massachusetts contract, it was subject to redemption under the laws of that state.  *Gross* v. *Jordan,* 83 Maine, 380.  If a Maine contract, not having been made and signed as a part of the notes given for the price, it is void altogether.  R. S., c. 111, § 5.  *Holt* v. *Knowlton, ante,* p. 456. The writing of sale had been assigned to the defendant, and the amount due thereunder was tendered him by the plaintiff before action brought.  The tender was paid into court with the entry of the writ and became payment.  The defendant could have taken it at any time, and can still take it.  It is his money and has paid his claim upon the soda fountain from the vendor of it.

Judgment for plaintiff for one dollar damages with costs and for eight bottles of tamarinds and for all the fixtures replevied, except one ice chest, one easy chair, and one circular wooden stand.

Judgment for defendant for the ice chest, easy chair, and wooden stand and for all the stock replevied, except the tamarinds, with costs.

It is impracticable to assess damages for defendant.  As to costs see *McLarren* v. *Thompson,* 40 Maine, 284.

*Mandate accordingly.*

VIRGIN and LIBBEY, JJ., died before the decision of this case.