No. 28,795.

THE STOCKYARDS PETROLEUM COMPANY, *Appellant,* v. ACHSAH HUFFMAN BEDELL, Garnishee (O. E. BEDELL, *Defendant,* E. R. BEDELL, Garnishee), *Appellee.*

(278 Pac. 739.)

Opinion filed July 6, 1929.

*C. H. Brooks, Willard Brooks, Howard T. Fleeson* and *Howard T. Horrell,* all of Wichita, for the appellant.

*P. D. Gardiner* and *O. W. Helsel,* both of Wichita, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: This controversy presents two questions: (1) whether gasoline pumps, tanks, air compressors or similar appli-

ances generally used in the operation of filling stations are fixtures within the meaning of the bulk-sales act (R. S. 58-101), and (2) whether the rule applies where such articles are bolted, screwed or otherwise attached to the real estate by the proprietor of the filling station who is also the owner of the real estate. The plaintiff sought to subject the appliances mentioned to the provisions of the bulk-sales act, was defeated, and appeals.

The facts are substantially these: Prior to March 24, 1927, the defendant, O. E. Bedell, was the owner and operator of a filling station, including the real estate, with the usual fixtures and with a stock of merchandise, including gasoline, lubricating oils and accessories. The stock of merchandise was inventoried at $464. About the date mentioned the defendant moved to California, owing the plaintiff $844.31 for gasoline. At the same time he transferred the merchandise and miscellaneous unattached appliances to his brother, E. R. Bedell, who thereupon assumed proprietorship of the business, and he (O. E. Bedell) deeded the real estate for a money consideration to his brother's wife, Achsah Huffman Bedell. The principal appliances in controversy were attached to the real estate in such manner as is usual at filling stations. They were treated by the parties as passing with the real estate to Achsah Huffman Bedell. No attempt was made in either transfer to comply with the bulk-sales act. The plaintiff, having secured judgment against O. E. Bedell, sought recovery from E. R. and Achsah Huffman Bedell as garnishees. The trial court held that the attached articles (the gasoline pump, tanks and the air compressor) had become part of the real estate and therefore ceased to be fixtures within the meaning of the act. The garnishees contend that the question whether or not the appliances in question were fixtures was one of fact which the court determined in their favor by holding that such articles were part of the realty.

The subject of filling-station fixtures as affected by taxes levied thereon was considered in *Boxer v. Sears*, 119 Kan. 733, 241 Pac. 443, where it was held that when erected upon leased ground the whole filling station with all its parts and appurtenances might be treated as removable personal property. In *Water Co. v. Irrigation Co.*, 64 Kan. 247, 67 Pac. 462, water pipe under a platted subdivision of a city was treated as a removable trade fixture. In *Review Printing Co. v. Hartford Fire Insurance Co.*, 133 Minn. 213, 158 N. W. 39, a fire insurance policy on a printing establishment in-

cluded "furniture and fixtures." The question was raised whether this included a heavy linotype machine which was attached to the building. The court said:

"Whether an article is a fixture depends very much upon the circumstances and the intention of the parties. It would serve no useful purpose to discuss the meaning of the word as between landlord and tenant, vendor and vendee, mortgagor and mortgagee, or to enumerate circumstances under which a chattel may or may not become a fixture. (See 1 Dunnell, Minn. Dig., secs. 3772, 3773.) A distinction is recognized between a fixture which is a part of the realty and a removable fixture (*Pond & Hasey Co. v. O'Connor*, 70 Minn. 266, 268, 73 N. W. 159, 248), but the chattel is generally termed a fixture whether permanently attached or removable." (p. 214.)

In *Sawyer v. Long*, 86 Me. 541, 30 Atl. 111, there was a mortgage on "my stock and fixtures in the store now occupied by me." The mortgagee sued in replevin. It was held that the mortgage covered all shop appliances of a permanent nature used in connection with the business which his mortgagor could have removed as against his landlord. It was held to be immaterial whether any particular appliance was temporarily a part of the real estate as a technical fixture.

Plaintiff argues (we think with sound reason) that the "non-technical use of the word 'fixture' seems to be the sensible interpretation which ought to be applied. Otherwise we become lost in the shifting rules as to what is removable, for example, as between landlord and tenant, mortgagor and mortgagee and heir and executor, so that no creditor would ever know upon what to rely." A similar matter was discussed in *Thurston v. Union Ins. Co.*, 17 Fed. 127, a case which involved a fire insurance policy on a store building which excluded "store fixtures." The court said:

"There is no doubt that an exception of fixtures out of a policy upon buildings refers to things which are, under some circumstances, removable, and not necessarily and always a part of the buildings. If we could suppose a printed exception in a policy to be intended to adapt itself to the various relations of landlord and tenant, mortgagor and mortgagee, heir and executor, so that fixtures refer to what may be removed in the particular case, all the disputed items in this case would be within the policies, because they are undoubtedly irremovable, as between the plaintiff and the mortgagee. But if these same things had been affixed by a tenant there is no doubt that he might remove them during his term. Such a shifting construction would be unreasonable. We must look for a meaning of 'store fixtures' which has a more general application. And I find it in the context and the popular meaning of the words. I hold it to mean, in this connection, store fittings or fixed

furniture, which are peculiarly adapted to make a room a store, rather than something else." (p. 128.)

In the instant case no good reason is advanced, in our opinion, why the appliances in question should not be treated separately from the real estate in order to bring them within the provisions of the bulk-sales statute. The statute prohibits "the sale or disposal of any part or the whole of a stock of merchandise or the fixtures pertaining thereto," etc. (R. S. 58-101.) It was designed to prevent the very thing here attempted by the vendor. At the time of the installation of the appliances it must have been his thought—his intention—to put in those things which pertained to the merchandising business such as is conducted in a modern filling station. They were undoubtedly installed for the conduct of the business rather than as an improvement to the real estate itself. We are not unmindful of the rules for ascertaining whether an article is a chattel or an irremovable fixture and that such rules embody: "First, real or constructive annexation of the article in question to the realty; second, appropriation or adaptation to the use or purpose of that part of the realty with which it is connected; third, the intention of the party making the annexation to make the article a permanent accession to the freehold." (See cases cited in 2 Words and Phrases [2d series], p. 578, under "Fixtures." Also same work, vol. 4, p. 956, under "Trade Fixtures.") It may be noted that the court's finding that it was the intention of the parties that the appliances in question be regarded as part of the realty, referred to the vendor and purchaser instead of referring to the intention of the owner (vendor) at the time the appliances were annexed to the realty. Had Bedell been a mere tenant, the gas pumps, tanks and the air compressor would without question be held to be removable tenant's fixtures and under the decisions would clearly be held subject to the bulk-sales act. Under all the circumstances, the fact that the owner of the real estate himself attached them makes no difference. They are just as removable by its owner as any tenant's fixture and in the eyes of any creditor have all of the same obvious attributes.

The judgment is reversed and the cause remanded with instructions to render judgment for plaintiff for the value of the gasoline pumps, tanks and air compressor as of the date purchased by the garnishee.