[No. 1356. December 8, 1911.]

FIRST NATIONAL BANK OF ALBUQUERQUE, Appellee, v. J. H. HAVERKAMPF, (J. A. Miller, Trustee in Bankruptcy), Appellant.

### SYLLABUS.

1. Each error relied upon must be separately assigned.

2. A finding supported by a substantial preponderance of evidence will not be disturbed on appeal.

3. The doctrine of absolute fraud arising in a mortgage on merchandise, from the mortgagors retaining possession with the power of disposal in the usual course of trade, is contrary to sound principles of jurisprudence.

4. The failure to record mortgage promptly does not constitute a fraud in law as to subsequent creditors.

Appeal from the District Court for Bernalillo County, before IRA A. ABBOTT, Associate Justice. Affirmed.

MARRON & WOOD for Appellant.

Mortgage not recorded was fraudulent in law and void as to creditors. Blennerhassett v. Sherman, 105 U. S. 100; Waite on Fraudulent Conveyances, sec. 235; Clayton v. Exchange Bank, 121 Fed. 630; Code Ga. 1895, secs. 2724, 2727; Bunch v. Schaer, 48 S. W. 1071; Curtis v. Lewis, 50 Atl. 878; 2 Kent's Com. 523, 14 ed.; 26 Enc. 662; Ruggles v. Cannedy, Cal., 53 Pac. 911; Kit-

chen v. Shuster, 14 N. M. 164; 5 Enc. 1014; 25 Enc. 130; re Noel, 137 Fed. 694; re Bothe, 173 Fed. 597; C. L. 1897, sec. 3960; Post v. Berry, 175 Fed. 564; Nickell v. Tracy, 184 N. Y. 386; Bonell v. Griswell, 89 N. Y. 322; Bank v. Stewart, 14 N. M. 551; in re Shirley, 112 Fed. 301; re Hunt, 139 Fed. 283; re Roeser, 148 Fed. 975; Clayton v. Exchange Bank, 121 Fed. 630.

The mortgagee takes no legal title to after-acquired property. 5 A. &. E. Enc. 979; Jones on Chattel Mortgages, 3 ed. secs. 138, 154, 155, 164; Jones v. Richardson, 10 Met. 481; Gardner v. McEwen, 19 N. Y. 123; Chase v. Denny, 130 Mass. 566; McCaffrey v. Woodin, 65 N. Y. 459; 14 A. & E. Enc. 268; Zartman v. Bank, 189 N. Y. 267.

Transfers which at common law are void as to creditors are void as to trustees in bankruptcy. Security Warehousing Co. v. Hand, 206 U. S. 415; Rev. Stat. Wis. 1898, sec. 2313; Thompson v. Fairbanks, 196 U. S. 516; York v. Cassell, 201 U. S. 344; in re Economical Printing Co., 110 Fed. 514; Skelton v. Codington, 185 N. Y. 80; Bank v. Staake, 202 U. S. 141; Humphreys v. Thalman, 198 U. S. 95.

A judgment and execution are unnecessary to enable a creditor to attack a fraudulent transfer. Early Times Distillery Co. v. Zeiger, 9 N. M. 31; Grunsfeld Bros. v. Brownell, 12 N. M. 192; Case v. Beauregard, 11 Otto 688; 20 Cyc. 692; Bank v. Wetmore, 124 N. Y. 241; in re Beckman, 177 Fed. 161.

Execution was before bankruptcy. In re Boyer's Estate, 52 Pa. St. 432; Hunt v. Swaze, 55 N. J. L. 33; Clark v. Duke, 59 Miss. 575; Alrichs v. Thompson, 5 Harr., Del. 432; Hockman v. Hockman, Va., 57 A. S. R. 816.

If the mortgage be declared invalid as to any creditor, then it is void as to all creditors. Ilfeld v. Baca, 13 N. M. 32; Edwards v. Brokerage Co., 74 Mo. Ap. 621.

The possession of the receiver is the possession of the court and not of any party to the litigation. Wiswall v. Sampson, 14 How. 52; Fosdick v. Schall, 99 U. S. 235; 23 A. & E. Enc. 1042; Miller v. Jones, 15 N. B. R. 150;

Bank v. Haverkampf, 16 N. M. 497.

in re Gourney, 7 Biss. 414; 86 Fed. 35; 21 Enc. 589; Gratz v. L. & R. I. Co., 82 Fed. 381; in re Ducker, 134 Fed. 43; in re Carney, 53 Fed. 927; 19 Enc. P. & P. 538; 1 Jones on Mortg., sec. 580; 21 Enc., 2 ed. 589; White v. McGarry, 47 Fed. 420; Stout v. Richard J. Carney Co., 53 Fed. 527; Miles v. Blanton, 3 Dana, Ky. 525; Carr v. Callaghan, 3 Litt. 371.

FELIX H. LESTER and HERBERT F. RAYNOLDS for Appellee.

An assignment of error must point out the specific error complained of. Melini et al. v. Friege et al., 15 N. M. 455; Territory v. Clark, 13 N. M. 61; U. S. v. Irrigation Co., 10 N. M. 635; Pearce v. Strickler, 9 N. M. 467; Schofield v. Territory, 9 N. M. 526; Territory v. Guillen, 11 N. M. 194; Cevada v. Miera, 10 N. M. 62; Mogollon G. & C. Co. v. Stout, 14 N. M. 245; McRae v. Cassan, 15 N. M. 496; Territory v. Anderson, 4 N. M. 213; Territory v. Cordova, 11 N. M. 367.

Findings of the trial court supported by any substantial evidence will not be disturbed on appeal. Candelaria v. Miera, 13 N. M. 360.

Mortgage was free from fraud in law and in fact. Clayton v. Exchange Bank, 121 Fed. 630; Bank v. Lesser, 10 N. M. 700; Kitchen v. Schuster, 14 N. M. 176; Ilfeld v. Baca, 13 N. M. 38; Foster v. McAllister, 114 Fed. 152; Bank v. Frank, 63 Ark. 16; Schultz v. Hoagland, 85 N. Y. 464; Bank v. Stewart, 14 N. M. 551; in re Shirley, 112 Fed. 301; Rev. Stat. Ohio, sec. 4150; in re Hunt, 139 Fed. 283; Jones on Chattel Mortgages, 5 ed., secs. 241, 243; Rogers v. Page, 140 Fed. 597; Valleley v. Bank, 116 A. S. R. 700; in re Antigo Screen Door Co., 123 Fed. 249; Sawyer v. Turpin, 91 U. S. 114; York v. Cassell, 201 U. S. 344; Hewitt v. Berlin Machine Co., 194 U. S. 296; 14 A. & E. Enc. 269; Bump on Fraudulent Conveyances, sec. 33.

The trustee takes no greater interest in, nor title to, the property of the bankrupt than the bankrupt or his creditors had at the time his title accrues. 5 Cyc. Bank-

ruptcy 347; in re Economical Printing Co., 110 Fed. 514;
Loveland on Bankruptcy, 3 ed. 438; Security Warehous-
ing Co. v. Hand, 206 U. S. 415; Hewitt v. Berlin Ma-
chine Works, 194 U. S. 296; in re Kellogg, 112 Fed. 54;
118 Fed. 1017; in re Platteville Foundry & Machine
Co., 147 Fed. 828; Loveland on Bankruptcy 589; Meyer
Bros. Drug. Co. v. Pitkin Drug Co., 136 Fed. 396;
Humphrey v. Tattman, 198 U. S. 91; Muller v. Nugent,
184 U. S. 1; York Mfg. Co. v. Cassell, 201 U. S. 344;
Thompson v. Fairbanks, 196 U. S. 516; in re Pierce, 157
Fed. 755.

The failure to record a mortgage does not invalidate
it as between the mortgagee and the trustee in bankruptcy.
Peabody v. Landon, 61 Vt. 318; Dooley v. Pease, 180 U. S.
126; Thompson v. Fairbanks, 196 U. S. 516; in re Wright
96 Fed. 187; Loveland on Bankruptcy 586; in re Ducker,
134 Fed. 43; in re Garcewich, 115 Fed. 87; in re Great
Western Mfg. Co., 152 Fed. 123; in re International Ma-
hogany Co., 147 Fed. 147.

Recording Acts of New Mexico make no mention of
creditors and they are not protected thereby.   C. L. 1897,
secs. 75, 2953, 2361, 3953, 3955, 3960; Laws 1876, chap.
36, secs. 1, 2, 3; C. L. 1884, secs. 1586, 1587, 1588; Laws
1889, chap. 73; Webb on Record of Title, sec. 10; Ilfeld
v. Baca, 13 N. M. 32; Kitchen v. Schuster, 14 N. M.
164; Runyan v. McClellan, 24 Ind. 165; Kirkpatrick v.
Caldwell, 32 Ind. 147; 16 A. S. R. 381; Mann v. State,
116 Ind. 383; Emmons v. Pence, 78 Ind. 439; Hutchinson
v. First National Bank, 133 Ind. 271; Loveland on Bank-
ruptcy, 3 ed. 438; Collier on Bankruptcy, 6 ed. 555;
Jones on Chattel Mortgages, 5 ed., secs. 237, 325, 364, 356;
Rogers v. Page, 140 Fed. 596.

Unless the words of the statute are so broad as to
manifestly include creditors at large, only those are re-
garded as creditors who obtain a lien by judgment, attach-
ment or otherwise before an antecedent debt or mortgage
is recorded.   Ilfeld v. Baca, 13 N. M. 32; Bump on Fraud-
ulent Conveyances, secs. 450, 451, 536; 6 Cyc. 1104; Peo-
ple's Bank v. Bates, 120 U. S. 556; Noyes v. Ross, 75 A. S.
R. 557; Fulsum v. Peru etc. Co., 69 Neb. 316; Union

National Bank v. Oium, 44 A. S. R. 533; in re Shirley, 112 Fed. 301; Vallely v. First National Bank, 14 N. D. 580; McNeil v. Finnegan, 23 N. W. 540, Minn.

Possession under mortgage by mortgagor in absence of agreement to the contrary is permitted by New Mexico statute. C. L. 1897, sec. 2365.

Filing and recording of a mortgage under the registration act has the same effect as taking possession by the mortgagee. Jones on Chattel Mortgages, secs. 236, 243.

Evidence properly admitted. Lynch v. Grayson, 5 N. M. 488.

Execution and delivery of mortgage were proven. U. S. v. Folsom, 7 N. M. 547.

Mortgagee entitled to after-acquired property. Jones on Chattel Mortgages, 5 ed., sec. 170; Jones on Chattel Mortgages, secs. 138a, 173; Mattley v. Wolfe, 175 Fed. 619; Union National Bank of Chicago v. Kansas City Bank, 136 U. S. 223; Wiswall v. Samson, 14 How. 52; Allen v. Railroad Co., 3 Woods 316; U. S. Trust Co. v. Wabash W. Co., 150 U. S. 287; Dow v. R. R. Co., 124 U. S. 654; Ames v. Railway Co., 73 Fed. 49; Central Trust Co. v. Worcester Cycle Mfg. Co., 86 Fed. 35.

## STATEMENT OF THE CASE.

The complaint alleged that on the 11th day of December, 1905, the defendant, Haverkampf, made and executed to the plaintiff his demand note for Nine Thousand Dollars, ($9,000) with 9 per cent. interest and attorney's fees, upon which was paid and credited $3350.00 and interest to January 11, 1907. It also alleged the execution and delivery on the same date, December 11, 1905, of a mortgage from Haverkampf to the plaintiff to secure the payment of the aforesaid note; and that this mortgage was not recorded until January 9th, 1907. It also set up that a quantity of the property covered by the mortgage was fraudulently transferred by Haverkampf to the defendant Kyle and prayed judgment setting aside such alleged transfer to Kyle and foreclosing the mortgage. A copy of the mortgage is attached to the complaint as an ex-

hibit and purports to convey all the property, real or personal, then possessed by Haverkampf and also all property he should thereafter acquire, including all his book accounts and choses in action. The plaintiff prayed for judgment for amount due, for foreclosure of the mortgage and for appointment of a receiver. On the same date that this complaint was filed, an order was made appointing a receiver of the property covered by the mortgage and the receiver thereupon took possession of the property. The defendant, Kyle, appeared on May 23rd, and answered those allegations of the complaint, charging fraudulent transfer of property to him, denying any fraud. A trial was had on January 3rd, 1908, of the issues raised by the answer of the defendant Kyle, and resulted in a judgment dismissing the complaint as to the said defendant. On May 27th, 1907, defendant Haverkampf filed his voluntary petition in bankruptcy and was by the court adjudged a bankrupt on the same day. The defendant, Miller, was elected trustee in bankruptcy of the estate on the 22nd of June, 1907, and was duly made a party defendant to the suit as such trustee. On December 12th, 1908, the defendant Miller filed an amended answer to the complaint, setting up the proceedings as hereinbefore cited, the appointment of this defendant as trustee, that at the time the note and mortgage set up in the complaint, were made, (and that at the time the mortgage was executed) the plaintiff and Haverkampf, who was then engaged in business as a dealer in general merchandise, agreed to keep the same off record and conceal its existence; that Haverkampf was to continue in possession of the property, selling and treating the same in all respects as his own; that he was to continue to buy goods on credit and incur debts to other parties therefor; that pursuant to said agreement the said mortgage was kept off record and concealed for more than a year and that in the mean time the said Haverkampf continued to buy goods on credit with the knowledge and consent of the plaintiff and incurred indebtedness to the extent of several thousand dollars. It is further alleged that some of the creditors had secured judgments against the defendant

Haverkampf, and that by reason of these facts the mortgage of the plaintiff was fraudulent and void as against the creditors. Reply was filed denying all fraud or fraudulent agreements concerning the execution or withholding from record of the plaintiff's mortgage, and a trial was had, resulting in a decree for the plaintiff for $7,444.26, together with $744.45 attorney's fee, sustaining the validity of the plaintiff's mortgage and declaring the same a prior lien upon the funds in the hands of the trustee, derived from the sale of the property mortgaged. From this decree the defendant. Miller, Trustee, brought the case to this court by appeal.

## OPINION OF THE COURT.

M'FIE, J.—There being no denial of the indebtedness represented by the note and mortgage sued on by the plaintiff, the sole question for determination by this court is, whether or not the trial court erred in its decree awarding to the plaintiff a prior lien by virtue of the mortgage indebtedness upon the funds now in the trustee's hands, the same having been derived from a sale of the mortgaged property. The court, having heard a large amount of evidence, made fifty-two findings of fact covering the disputed points and error is assigned upon several of these findings. The first assignment of error is, that the court erred in refusing to make ten findings of fact requested by the defendant. In the case of Oliver v. Enriquez, 16 N. M. 322, decided by this court at the present term, the court held that under Rule 13, each error relied upon must be separately assigned. This assignment is obnoxious to Rule 13 and cannot be considered. Counsel attempt to meet the requirements of Rule 13 by stating in the assignment that the court erred as to each of the ten findings refused, but we are of the opinion that this does not meet the requirements of Rule 13. The second assignment of error must fail for the above reasons, as it is identical with No. 1, excepting in that it relates to several conclusions of law instead of findings of fact. However, the remaining seventeen assignments of error seem to be in proper form and, as they

cover the subject matter of the assignments above referred to, no injury can result to the appellant in overruling these assignments.

We deem it proper to go at once to the consideration of the main question involved, without prolonging this opinion by a consideration of the large number of assignments of error found in the record, inasmuch as our conclusions upon the valid or fraudulent character of plaintiff's mortgage will necessarily dispose of the several assignments based upon occurences during the trial. That there was no fraud, in fact, is clear from the following finding of the trial court: "The court further finds that the said mortgage was given in good faith for a present consideration, to secure the payment of the note sued on, and exhibited herein, and that the said mortgage and all the transactions in connection therewith, were free and clear of fraud in fact." This finding is supported by a substantial preponderance of the evidence and other findings of the trial court. This court has repeatedly held that under such circumstances, the finding will not be disturbed on appeal. Hamilton Mining Co. v. Hamilton, 14 N. M. 272; Hagerman Irrigation Co. v. McMurray, 16 N. M. 172; 113 Pac. 823.

Our next inquiry is, was there fraud in law in the taking of the mortgage and failure to promptly record the same as against general creditors? The record shows, and the court found, that at the time Haverkampf applied for this loan he owed R. B. Putney about $9,000.00, and that he owed other creditors sums aggregating $600.00 to $1,000.00; that Putney had a bill of sale covering nearly all of the property included in the plaintiff's mortgage as his security, and was threatening to take possession of the property unless his indebtedness was paid. Haverkampf applied for, and obtained, this loan upon conditions stated in the mortgage and embodied in findings Nos. 10, 11 and 12. X. "That said mortgage to the plaintiff, provided that with the money loaned on it, the defendant Haverkampf, should pay all his indebtedness to other parties and should make purchases only for cash, so that the plaintiff should remain and be his only creditor; but it was orally

agreed between him and plaintiff that by "cash" should be meant that he might purchase his goods on short terms of credit, provided he paid his bills therefor promptly, as they became due, and that he should permit and have no overdue indebtedness, and should without delay begin, and thereafter continue, the reduction of said loan, which was on demand, and complete the payment of it without long delay." XI. "There was no express agreement between the plaintiff and Haverkampf that the mortgage should not be recorded, but it was understood that it would not be recorded unless Haverkampf violated its terms, or the terms of the agreement above stated; that he should not permit or have overdue indebtedness." XII "The plaintiff refrained from having the mortgage recorded because of its confidence in Haverkampf's integrity, and that he could and would observe and perform the terms of the mortgage and the agreement and understanding between them in relation thereto, and to avoid injuring him in his business, up to the time when it learned, about December, 1906, that he had created to parties other than the plaintiff, indebtedness which was overdue, and was otherwise failing to keep his said agreements. After the time when the plaintiff so learned it refrained from recording said mortgage for about a month, to enable Haverkampf to obtain money elsewhere to pay its claims." The findings disclose that all of Haverkampf's indebtedness which existed at the time the mortgage was given, had been paid and that the indebtedness now represented by the trustee was incurred since the 11th day of December, 1905, some of it incurred before, and some after, the recording of the mortgage. The following findings are deemed important in this connection, in disclosing the circumstances surrounding this transaction and the actions of the parties. XXI. "That it appeared affirmatively in evidence that one of said creditors (The San Jose Market), so selling goods on credit between said times, would not have sold the same on credit had they known of the existence of said mortgage, and that another would have." XXII. "It did not appear in evidence that the creditors who extended credit to Haverkampf before the recording of said mortgage

made any search of the record, nor effort to ascertain whether his property was mortgaged, or not." XXIII. "That the only creditors as to whom there was evidence on that point, who extended credit to Haverkampf during the period between the execution of the said mortgage and the recording of the same, also extended credit to him after the said mortgage was recorded." XXIV. "That said defendant, Haverkampf, made reports of his true true financial condition to R. G. Dunn & Company and Bradstreet's Commercial Agency, showing the existence of the indebtedness to the plaintiff." It further appears that Haverkampf remained in possession of the property in the store, buying and selling and replenishing his stock until the receiver, Charles F. Spader, was appointed and took possession May 9th, 1907, and that under an order of the court Spader surrendered possession thereof to Miller, the trustee in bankruptcy and appellant herein. The court further finds that Meyer, Bannerman & Company, Brown Bros. Shoe Co., Rothchild's Bros. Hat Co., and Hargadine-McKittrick Dry Goods Co., each recovered separate judgments against the defendant, Haverkampf, amounting in the aggregate to the sum of about $1,000.00. Judgments in the two first mentioned cases were filed May 27th, 1911, and the remaining two on June 8th, 1911. As will be seen, the first were obtained on the same day Haverkampf was adjudicated a bankrupt and the latter about twelve days thereafter. In the 47th finding the court declares that the assets of said defendant, Haverkampf, at their fair market value, exceeded his liabilities at the time the said note and mortgage were executed and that at that time Haverkampf had $3,000.00 on deposit in the First National Bank. There is nothing in the findings or the evidence to show that the plaintiff did in any manner encourage or induce any of the bankrupt creditors to sell goods or extend credit to Haverkampf during the time the mortgage was unrecorded. It further appears in the findings and the evidence that no creditors besides the plaintiff, had any lien, either by judgment or otherwise, upon any of the property of the said defendant, Haverkampf, at the time Charles F. Spader, receiver,

took possession of the property and accounts in terms included in said mortgage, under the order of the court. All of the above findings of fact we find to be sustained by the evidence taken at the trial, and the allegations of the answer, that the mortgage was withheld from record in pursuance of a fraudulent scheme and agreement to conceal the same from the creditors of Haverkampf with the fraudulent intent and purpose of inducing persons to give credit to Haverkampf, and the further allegation that Haverkampf was insolvent at the time the mortgage was executed are not sustained by the evidence, but, on the contrary, the evidence of Mr. Flournoy, who acted for the bank in making the loan, is to the contrary, stating distinctly that at the time the loan was made, Haverkampf was possessed of a large amount of property and had $3,000.00 to his credit in the bank and that the sole reason for the withholding of the mortgage from record was the absolute confidence reposed in Haverkampf, and, in addition to this, under the terms of the loan, the bank had no reason to believe that there would be any other creditors. Appellant relies upon two considerations as sufficient to warrant the court in holding the mortgage fraudulent as to creditors: 1st. That Haverkampf was permitted to remain in possession of the goods and was permitted to continue in business by selling and replenishing the stock. 2nd. Because of the withholding of the mortgage from record. Referring, then, to the first of these propositions, the mortgage provided that Haverkampf should retain possession and continue his mercantile business in the usual way. This precise point was before this court in the case of Bank v. Stewart, 13 N. M. 551. The court said: "But, even if it be granted that the rule of law contended for by the appellant was distinctly adopted in the two cases named, we think it has been so far worn away by the current of later decisions as to leave little, if any, more than that such a provision as the one in question is admissible as evidence of fraud, to be considered in connection with all the other evidence bearing on that point. To hold that such a provision of itself renders void the mortgage in which it occurs, no matter how fair and ample

the consideration may have been, would be to declare, in effect, that a stock of merchandise intended for retail trade, cannot be used as security for a loan, or for the purchase of necessary additions to it, except by first making an end of the sale for which alone the owner obtained it and on which its value chiefly depends." Etheridge v. Sperry, 139 U. S. 266; Huntley v. Kingman, 152 U. S. 527. That the doctrine of absolute fraud arising in a mortgage of merchandise, from the mortgagors retaining possession, with the power of disposal in the usual course of trade, is not supported by any preponderance of authority, that it is contrary to sound principles of jurisprudence, that the qualifications of the doctrine made by leading courts, have, in a large measure destroyed its force, and are indicative that these courts themselves wish to be rid of the whole of it." Jones on Chattel Mortgages, secs. 425, 435. We regard this point settled against the contention of the appellant upon the authority above cited. In the case of Bank v. Lesser & Lewinson, 10 N. M. 700, this court held that, where the facts upon which fraud is predicated consist as well with honesty as with dishonesty, the law presumes in favor of honesty. The bona fides of the bank in the entire transaction is apparent from both the evidence and the findings of the trial court, for while the mortgage was withheld from record, it was because of the absolute confidence of the bank officers in Haverkampf and in reliance upon the assurance of Haverkampf that the bank should be his only creditor, except for goods purchased upon thirty, sixty or ninety days time and to be paid for when due. It further appearing that when the bank discovered that Haverkampf had violated this latter agreement, the mortgage was recorded at once. Under the circumstances of this case, and in view of the fact that the bank actually paid to Haverkampf $9,000.00 in cash for the very purpose of enabling him to pay his indebtedness, it should not be chargeable with fraud by reason of the secret acts of Haverkampf in violation of his contract, the bank not being in any way a party to his acts or conspiring or conniving with him in connection with them. It is true that the mortgage to

the bank was not recorded until the 9th day of January, 1907, but, as appears from the evidence and the findings, the mortgage was not withheld under any agreement or for the purpose of enabling Haverkampf to obtain credit. No attempts were made to conceal the existence of the mortgage, on the contrary, the evidence of Haverkampf shows that he reported the fact of the incumbrance to the commercial agencies of Dunn and Bradstreet, from which eastern creditors obtain information as to the financial standing of those to whom credit is extended. Haverkampf testified to this as a fact and it is, therefore, competent evidence, as most of the bankruptcy creditors represented by the appellant are eastern creditors. It further appears from the evidence and findings that the creditors of Haverkampf, at the time the mortgage was given, had been paid and that, while the bankrupt creditors gave credit after the mortgage was executed, it was prior to its being recorded. The findings show that no efforts were made by any of the present creditors to ascertain whether or not this mortgage was recorded, and, while two of the creditors testified that they would not have extended credit to Haverkampf had they known of the existence of the mortgage, it further appears that both of those creditors extended credit to Haverkampf after the mortgage was recorded. In fact, so far as the record discloses, neither the bank nor other creditors of Haverkampf had any suspicion that he was in .a failing condition financially, a fact which accounts for much of the dealings with him up to the time of his failure.

The evidence, and the finding based upon it, as to the facts last above stated, were objected to and are made the subject of assignments of error, but we are of the opinion that the good faith of all those transactions may be shown in this case and that this evidence was competent as tending to show the honesty and good faith of the bank in reply to the suggestion that the mortgage was withheld from record in bad faith and in pursuance of an agreement and intent to enable Haverkampf to deceive and defraud creditors. But, be this as it may, we are of

the opinion that the failure of the bank to record its mortgage promptly, does not constitute a fraud in law as to the creditors represented by the appellant. This failure to record is relied upon as fraudulent in that the creditors were not put upon notice. In the case of Kitchen v. Schuster, 14 N. M. 176, this court held that the effect of a failure to record a chattel mortgage is to make it void as to purchasers and mortgagees in good faith without notice. It will be observed that creditors generally are not included. The law of this territory as it now exists is found in the following sections of the Compiled Laws of 1897: "Section 3953. All deeds, mortgages, United States patents and other writings affecting the title to real estate, shall be recorded in the office of the probate clerk of the county or counties in which the real estate affected thereby is situated." "Sec. 3955. From and after the 1st day of January, 1888, no deed, mortgage or other instrument in writing, not recorded in accordance with section three thousand nine hundred and fifty-three, shall affect the title or rights to, in any real estate, of any purchase or mortgage in good faith, without knowledge of the existence of such unrecorded instruments." "Sec. 2361. That hereafter all chattel mortgages, or other instruments of writing, having the effect of a mortgage or a lien upon personal property, shall be acknowledged by the owner or mortgagor and recorded in the same manner as conveyances affecting real estate. Upon the receipt of such instrument the recorder shall indorse on the back thereof the time of receiving it, and when recorded the party in whose favor the mortgage is executed shall have the right to withdraw the same. The recorder shall keep a book properly indexed, in which shall be recorded affidavits of renewal of chattel mortgages, and shall indorse on the back thereof the time of filing the same, and shall refer on the margin of the record of the same to the book and page in which the mortgage is recorded, which the affidavit is intended to renew. When such mortgage is acknowledged and recorded in the manner herein prescribed, or when such affidavit of renewal is recorded as herein required, and it shall be shown to the court by the

oath or affidavit of the party wishing to use the same, or either of them, or of any one knowing the fact that such mortgage or affidavit is lost or not in the possession of the party wishing to use the same, or either of them, the record thereof or the transcript of such record, certified by the recorder, under the seal of his office, may be received in evidence without futher proof. For recording a chattel mortgage the clerk shall receive one dollar and fifty cents when the same contains not exceeding ten folios of one hundred words each, and fifteen cents for each additional folio; for recording and indexing the affidavit, fifty cents; but this act shall in no manner affect or impair any existing chattel mortgage already filed as now required by law."

This court has declared the law upon this subject in the case of Ilfeld v. Baca, 13 N. M. 32-38. The court, speaking by Chief Justice Mills, said: "Registration is not to protect creditors unless specifically provided for in the law. That the registration act of this territory is not made to protect creditors is shown by the reading of Section 3953, of the Compiled Laws of 1897, which says: 'From and after the first day of January, 1888, no deed, mortgage or other instrument in writing, not recorded in accordance with Section 2953, shall affect the title or rights to, or in any real estate, of any purchase or mortgage in good faith, without knowledge of the existence of such unrecorded instruments.' Nothing is said in the act about creditors of the grantor. There is a great diversity in the statutes of the several states and territories as to the protection afforded to creditors by their several registry laws. In some states an unregistered deed is declared void as against 'creditors,' in others as against 'judgment creditors,' while in a considerable number (and New Mexico is among them), creditors are not mentioned in the statutes at all, and unrecorded conveyances are held valid as at common law against even judgment and attaching creditors. Unless the words of the statute are so broad as to manifestly include creditors at large, only those are regarded as creditors who obtain a lien by judgment, attachment or otherwise, before an antecedent deed

or mortgage is recorded. Webb on Record of Title, sec. 10." This case was again before this court on rehearing, 14 N. M. 65, but, while an opinion was written upon the rehearing, the construction of the registration statutes of the Territory as declared in the original opinion was not in any respect set aside or modified in the later opinion. The construction given those statutory provisions in the original opinion, therefore, must be adhered to as the views of the court upon that subject and are properly applied to the present case. Bean v. Orr, 182 Fed. 599. " 'Every conveyance' * * * 'not so recorded shall be fraudulent and void against any subsequent purchaser, lessee or mortgagee in good faith for a vaulable consideration. None of the creditors whose claims are represented by the assignee are either subsequent purchasers. lessees or mortgagees, and are therefore not within the classes against whom the intrument is by statute declared to be fraudulent and void. Runyan v. McClellan, 24 Ind. 165; Kirkpatrick v. Caldwell Admr., 32 Ind. 299; Shirk v. Thomas, 121 Ind., 147; 16 A. S. R. 381; Mann v. State, 116 Ind. 383; Emmons v. Pence, 78 Ind. 439. We cannot extend the terms of the statute so as to include general creditors in the classes of persons against whom unrecorded mortgages are to be deemed as an inference of law fraudulent and void, for that would be legislation." Hutchison v. First National Bank, 133 Ind. 271; 36 A. S. R. 537, at 545. See, also, Loveland on Bankruptcy, 3 ed., pp. 438, 439, note 31 and p. 595, and cases cited. Collier on Bankruptcy, 6 ed., 555, and cases cited; Jones on Chattel Mortgages, 5 ed., secs. 237, 325, 364, 356, and cases cited. See, also, Rogers v. Page, 140 Fed. 596, at p. 606. This case seems to be conclusive in that it holds distinctly that the failure to record a chattel mortgage does not constitute a fraud in law and render the same void as to creditors in this territory. In the brief of counsel for appellant, the attention of the court is called to a number of cases which counsel strongly contend support their contention that the mortgage in this case was fraudulent in law as against the creditors of the bankrupt estate. This contention is based on the failure of the bank to promptly record its

mortgage. It must be admitted that the authorities are not harmonious on this subject, but an examination discloses that the difference of the statutes of the different states as to the effect of recording deeds, mortgages, and other instruments is the basis for this diversity of opinion. Counsel for appellant refer to several cases which, it is contended by them, are conclusive of this case. The first case relied upon is Blennerhassett v. Sherman, 105 U. S. 100. While this is a well considered case, the facts of the case are essentially different from the present case. In the Blennerhassett case there was positive notice of insolvency and an absolute want of good faith in addition to the failure to record the instrument promptly. As to knowledge of insolvency, the court said: "Notice of his insolvency was also brought home to Stephens and Blennerhassett by their knowledge of the fact that he had appropriated to his own schemes and speculations a fund which, principal and interest, amounted to over $800,000, committed to his custody as a trustee and receiver. The evidence that they knew of the fact of his appointment as receiver, the amount of the fund which came to his hands and the appropriation of the fund to his own uses is conclusive." In addition to this, the court found that Blennerhassett and Stephens actively concealed the incumbrance for the unlawful purpose of inducing credit and, also, by false representations by Blennerhassett and Stephens. In fact, the case discloses a studied scheme of fraud and deception. The case at bar is different in almost every respect. The bank paid the $9,000 in cash for the sole purpose of paying in full all of the then indebtedness of Haverkampf, so that the bank should be his sole creditor, and the money was used for that purpose, as is not denied. It is true that for the purpose of replenishing the stock of goods which was necessary and incident to a mercantile business, permission was given to purchase, but upon condition that all bills should be paid when due. It also appears that at the time the mortgage was executed, Haverkampf was required by the bank to make a schedule of his assets and liabilities, from which it appeared that his assets were valued at approximately $35,000.00, while

the liabilities were $10,000, which schedule was signed by Haverkampf. It further appears from the evidence that Haverkampf had $3,000.00 to his credit in the bank. The bank, therefore, could have no notice or evidence of insolvency, or reasonable grounds for believing that Haverkampf was, or was likely to become, insolvent. In addition to this, the facts show that Haverkampf claimed that he transacted business to the amount of $35,000 per annum, so that the loan was not made to bolster a failing concern. From the facts found the bank made the loan, secured by the mortgage, with the utmost good faith and the mortgage was not promptly recorded because of the confidence reposed in Haverkampf and the solvency of his business. These facts are not seriously disputed, so that the case of Blannerhassett v. Sherman, supra, appears to be inapplicable. The case of Bean v. Orr, 182 Fed. 599, is so nearly on all fours with the case now under consideration, that reference will be made at this point. "After a careful reading of the evidence, we are unable to find sufficient facts warranting the holding that Bean acted otherwise than in the utmost good faith, or that he was in any wise a party to any intention to hinder and delay or defraud any of the creditors of the Tysor-Cheatham Mercantile Company, or, at the time of advancing his money to the said company, he had any suspicion that the same company was insolvent. In fact, the case shows that the very $4,000 which Bean advanced on the security in question was full consideration and was intended to be used, and was used, to pay off creditors, and the propriety and necessity of the loan is shown to have been the dullness and embarrassment of business, crops being short, collections poor, and that the company was presently unable to dispose of its goods. It is true that Tysor, of the Tysor-Cheatham Mercantile Company, was a brother-in-law of Bean, and Bean wanted to help him, and he testifies that he had confidence that Tysor could and would repay him; and it is also true, under the circumstances fairly explained by Bean, that his mortgage was not recorded until some months subsequent to its execution. It is on these last-mentioned circumstances that the referee held that the

mortgage was executed to hinder and delay creditors, relying upon the case of Clayton v. Exchange Bank, 121 Fed. 630, 57 C. C. A. 656, in which this court, in a case where there was a mortgage upon a stock of goods on hand and to be added to by subsequent purchases, and an agreement to withhold the mortgage from the record for the purpose of aiding the credit of the mortgagor, and the mortgage was withheld from record until the mortgagor decided to take the benefit of the bankruptcy act, and where there were other circumstances pointing to fraud, held, stressing the withholding from record, that the mortgage was fraudulent under Georgia Law, as made to hinder and defraud creditors. Here the mortgage is on real estate, and the evidence shows, at best, only suspicion that fraud was intended by either party to it, while Bean, the mortgagee, so far as such showing can be made, vindicates himself of all fraud or intention to defraud or to aid to defraud. Neglecting to promptly record a mortgage is not in itself fraudulent as against other creditors, and it is not made fraudulent by the additional fact that brothers-in-law are adverse parties to the mortgage." From this case it is clear that the mere fact of a failure to promptly record a mortgage will not authorize a holding that the mortgage is fraudulent as to creditors. There must be something more than this. The case from Georgia referred to in the above quotation is instructive upon this point and is one of the cases relied upon by appellant's counsel. There were no fraudulent representations or acts attributable to the bank or its officers, as the court declared in its eleventh finding of fact. In the case of in re Hunt, 139 Fed. 283, the court said: "But while the court may have its suspicions that such was the fact, it is not, therefore, at liberty to so find or hold, even if those suspicions are justified by, and grew out of, the evidence. Fraud must be proved. It may be inferred from facts established by competent proof, but the inference of fraud cannot legally be drawn and is not justifiable when the inference of innocence is just as consistent with the facts. I cannot find from this evidence that the failure to record the mortgage was accompanied

by such acts on the part of the mortgagee or of its agents that a fictitious credit was given to Hunt, now the bankrupt, or that the acts of the defendant induced any creditor to forego any right. The defendant is not estopped from asserting the mortgage." In re Shirley, 112 Fed. 301. In this case the court discussed the effect of an unrecorded mortgage as to creditors under a statute in Ohio, declaring such instruments void. The court said, in part: "A creditor which was selling goods to its debtor took a chattel mortgage to secure his past indebtedness, but agreed, at the instance and request of the debtor, to withhold such mortgage from record so long as he should pay a certain sum per month and should pay cash for subsequent purchases. The creditor supposed that it was furnishing the debtor with practically all the goods he purchased, and there was no actual fraudulent intent. Held that, under such circumstances, the mortgagee was not estopped from subsequently filing its mortgage and asserting its lien thereunder from that date upon property other than the mortgagor's stock, as against other creditors who had in the meantime sold goods to him, without the mortgagee's knowledge.

In the present case, therefore, to hold that there was legal fraud it would be necessary to predicate this upon the fact that the mortgage was not recorded for about one month after the officers of the bank became aware of the fact that Haverkampf had purchased goods and failed to pay for them, in violation of his agreement with the bank. Until this time all the testimony and circumstances tend to show that the officers of the bank regarded the bank as the sole creditor of Haverkampf. It is true that the mortgage was not recorded for more than one year after its execution, but, having been given for full cash consideration, not in contemplation of insolvency, but for the sole purpose of enabling Haverkampf to pay his entire indebtedness, together with an agreement that no new indebtedness, of any consequence, should be incurred by him, without any agreement that the mortgage should not be recorded and with no evidence whatever of efforts on the part of the bank or its officers to induce the

extension of credit to Haverkampf, we are of the opinion that this case is not governed by the doctrine announced in the cases relied upon by the appellant, but is within the law as laid down in the cases last above referred to. If so, the bank should not be barred or postponed from enforcing its lien. Judgments for sums aggregating about $1,000.00 were rendered against the defendant, Haverkampf, on the same day on which he was adjudicated a bankrupt, but whether the judgments were rendered prior to the adjudication is not made clear. However, the mortgage, having been recorded January 9th, 1907, and the judgments rendered May 27th, 1907, the mortgage was a prior lien. All other creditors of the bankrupt were general, and not, lien creditors. That the trustee in bankruptcy stands in the shoes of the bankrupt and that his rights are similar, is settled by numerous authorities. York Mfg. Co. v. Cassell, 201 U. S. 353; Humphrey v. Tattman, 198 U. S. 95; in re Economical Printing Co., 110 Fed. 514; Security Warehousing Co. v. Hand, 206 U. S. 424; Hewitt v. Berlin Machine Works, 194 U. S. 302. That a mortgage, valid under state law made before the four months' period is valid as against the trustee of the mortgagor, is also declared by the above authorities. The mortgage in this case, having been both executed and recorded more than four months prior to the filing of the petition in bankruptcy, its lien would be valid under the bankrupt law and creditors represented by the trustee having no prior and subsisting lien. From these conclusions it follows that the judgment of the court below should be affirmed with costs. It is so ordered.