287 P.2d 57

**JOE HEASTON TRACTOR & IMPLE-MENT CO., a New Mexico corporation, Plaintiff-Appellant,**

v.

**R. L. CLAUSSEN, Defendant,**

**Richard C. Losh, Trustee in Bankruptcy for R. L. Claussen, Intervenor-Appellee.**

No. 5932.

Supreme Court of New Mexico.

Aug. 18, 1955.

Marron & McRae, Joseph Phil Click, Albuquerque, for appellant.

Scott H. Mabry, Albuquerque, for appellee.

McGHEE, Justice.

It is agreed the sole question to be determined by us is whether a written contract for the sale of a stock of merchandise, executed by the buyer and seller, and properly acknowledged, filed for record in the office of the county clerk, and providing on its face that the seller has title to replacements of and additions to a stock of merchandise as security for the unpaid balance of the purchase price, gives to the seller a valid security interest as against the trustee in bankruptcy of the buyer in additions to and replacements of the stock of merchandise as originally sold.

The trial court held the instrument to be a conditional sale contract and that the seller did not have a lien against the additions and replacements.

The contract for sale of the stock of merchandise contained the following provisions, inter alia:

"Buyer warrants and agrees:

"(a) That title to the merchandise, furniture and fixtures, and motor vehicle, covered by this Agreement, together with replacements thereof and additions thereto, during the executory period of this Agreement shall remain in seller as security for performance by buyer of the covenants and conditions herein contained to be performed by buyer.

\* \* \* \* \* \*

"If buyer shall default on the payment of any installment when due, abandon the property or the lease, or discontinue the operation of the business on the leased property, or breach any of the warranties, covenants and conditions herein contained to be performed by buyer, seller shall have its option of the following remedies:

"(1) Seller may resume possession of the property and hold all payments previously made as liquidated damages, and buyer agrees to redeliver said property to seller and to waive any claim for refund or accounting on any payments previously made.

"(2) Seller may declare the full unpaid balance of the purchase price due

and payable and enforce its claim against buyer for such amount by legal proceedings or otherwise, and buyer agrees that he will waive any exemption under the laws of the State of New Mexico.

"(3) Seller may retake the property, with or without process of law, and after giving such notice as may be required by law as to the sale of chattels on foreclosure of chattel mortgage, sell said property for the highest and best cash price obtainable, and apply the proceeds thereof to the amount owing to seller, any excess over the debt and expenses of the sale to be paid over to buyer, and in case of deficiency, buyer to be held liable to seller for the amount thereof on demand. It is expressly understood and agreed that the accounts receivable of the buyer and cash on hand and in bank accounts of buyer kept in connection with the business of 'Joe Heaston Town and Ranch store,' whether conducted in that or some other name, shall be at all times security for the performance of the covenants and conditions herein contained to be performed by buyer, and seller, its officers and agents designated by it in writing for that purpose, is hereby, in the event of default by buyer under this Agreement, named, constituted and appointed agent and attorney-in-fact of buyer, with full power and authority to collect the accounts receivable of buyer, and to receipt for and release the same, and with full power and authority to draw on any funds deposited by buyer in bank accounts connected with the business aforesaid, and the affidavit of seller, served upon or filed with any bank or debtor of buyer, that default has occurred shall be binding upon buyer and shall fully protect such bank or debtor in paying over to seller moneys due buyer on open account or from bank deposits."

In addition, the contract provided the buyer would maintain on hand net inventories, cash and accounts receivable, at all times, of a dollar value at least equal to the unpaid balance of the purchase price, that he would furnish monthly statements thereof to the seller, and that the seller, its agents and attorneys were to have free access to the books and records of the buyer. The buyer agreed that so long as there remained any unpaid balance on the purchase price he would not draw money from the business in excess of $600 per month for his personal or living expenses. Provision was also made that he would pay lease rentals, that he would keep the property insured, and that he would furnish warranty service on merchandise sold and service repossessions.

It will be noted the contract provides for the doing of a number of things by the buyer of advantage to the seller, other than paying for the stock and fixtures.

The conventional remedies of the holder of a conditional sale contract on default of the buyer are the alternate ones provided in paragraphs (1) and (2) above, relating to defaults; but in paragraph (3) we find the conventional remedy of a mortgagee upon default by the mortgagor, plus the unusual provisions for an assignment of bills receivable owing to the buyer and the assignment of money in his bank account which came with the business.

Because of the harsh remedies available to the holders of conditional sale contracts, they are not favored in the law. Hughbanks, Inc., v. Gourley, 1941, 12 Wash. 2d 44, 120 P.2d 523, 138 A.L.R. 658; Annotation 92 A.L.R. 304, pp. 310, 311. In case of doubt, the courts hold the instruments in question to be chattel mortgages. Bogert, Commentaries on Conditional Sales, Vol. 2A, Uniform Laws Annotated, p. 11.

The only purpose of a conditional sale contract is to give the seller security for the purchase price of property agreed to be sold by the terms of the instrument. There are many authorities, such as First Nat. Bank of Missoula v. Marlowe, 1924, 71 Mont. 461, 230 P. 374, which hold the seller must be the actual owner of the article sold before a conditional sale contract is valid as such; otherwise, it is held to be a mortgage.

In Gervasi v. Seattle & R. V. Ry. Co., 1928, 148 Wash. 635, 269 P. 1050, it was held that a purported conditional sale contract providing that, in the event of default, the vendor could retake the article, sell it and charge all costs and attorneys' fees to the purchaser, who should be liable for any deficiencies, and also authorizing the prosecution of concurrent remedies, amounted to a chattel mortgage only and passed title to the vendee thereunder. Its doctrine was followed in Roberts v. Speck, 1932, 170 Wash. 324, 16 P.2d 463; Robert Morton Organ Co. v. Armour, 1933, 173 Wash. 462, 23 P.2d 887, 27 P.2d 1119, and a number of other Washington cases. To the same effect is Weber Showcase & Fixture Co. v. Waugh, D.C.1930, 42 F.2d 515. See also First Nat. Bank of Missoula v. Marlowe, supra.

As heretofore stated, the third alternative remedy given the seller is the common remedy given the mortgagee in a chattel mortgage, and the seller is entitled to foreclose it as such.

In the present case the Heaston company, seller, only owned the property turned over to the buyer, Claussen, at the time the sale was consummated, and it is difficult to see how the seller could "retain" title to property it did not then own. In

our opinion, the option in the case of default under paragraph (3) converted the instrument into a chattel mortgage. Certainly this is true as to the after-acquired merchandise.

Since the case of First Nat. Bank of Albuquerque v. Haverkampf, 1911, 16 N.M. 497, 121 P. 31, there can be no question of the validity of a chattel mortgage as against subsequent creditors, on a stock of merchandise left with the mortgagor for sale in the ordinary course of trade, from the time of its filing for record. Such holding is implicit in the opinion in that case.

In First Nat. Bank of Roswell v. Stewart, 1906, 13 N.M. 551, 86 P. 622, this Court upheld the validity of a chattel mortgage on a stock of merchandise where the seller was permitted to dispose of it in ordinary course of trade and replenish it with other merchandise. However, this Court specifically refused to decide whether the lien extended to after-acquired stock because the question was not raised below.

The first time the validity of a chattel mortgage on a stock of merchandise, so far as it affected after-acquired merchandise, was directly passed upon by a court in New Mexico, was in the case of In re Harnden, D.C.N.M.1912, 200 F. 175, 176, where the late Judge Pope (who was the trial judge in First Nat. Bank of Roswell v. Stewart, supra, and a former Chief Justice of this Court) upheld a chattel mortgage on such after-acquired merchandise. The matter was before him on the following questions certified by the referee in bankruptcy:

" '(a) As a matter of law, is a chattel mortgage containing a clause providing for a lien on goods afterward purchased by the mortgagor, in the regular course of trade, with no provision for any accounting for the goods sold, or for applying any of the proceeds of goods sold, on the mortgage debt, valid as against wholesale merchants who sold the goods to the mortgagor?

\* \* \* \* \* \*

" '(c) Is a chattel mortgage containing a clause providing for a lien on 'all goods now in said store, or hereafter placed there,' a valid lien on goods subsequently purchased from wholesale merchants in the regular course of trade, where it is shown that the mortgagor, with the full knowledge and consent of the mortgagee, was permitted to continue business, to buy and sell goods in the regular course of trade, make no report to the mortgagee, and thus permitted and assisted by the mortgagee allowed to sell a large part of the original stock of goods and to incur large new indebtedness for new goods, valid against creditors made under such circumstances?' "

Judge Pope concluded the questions had to be decided according to the law of New Mexico where the mortgage was executed, and, after reviewing the cases of Spiegelberg v. Hersch, 1884, 3 N.M., Gild., 281, 4 P. 705; First Nat. Bank of Roswell v. Stewart, supra; and First Nat. Bank of Albuquerque v. Haverkampf, supra, said:

"It follows, therefore, that the questions certified by the referee must each be answered in the affirmative. Since the decision of the referee in effect answered them in the negative, that decision must be reversed, subject to one consideration, to be now stated. Since in Etheridge v. Sperry [139 U.S. 266, 276, 11 S.Ct. 565, 568, 35 L.Ed. 171], the recording of the mortgage is considered a matter of such importance in changing the old rule, the failure of the bank from March 8, 1911, to May 26, 1911, to record its mortgage operated necessarily to the prejudice of creditors without notice, if any, during that period, and was calculated to entrap parties into extending credit until a record afforded an opportunity to determine the existence of the mortgage. It is not shown by the transcript that any persons extended credit during that period; if so, the present mortgage must be declared void as to such creditors. In re Bothe, 8 Cir., 173 F. 597, 97 C.C.A. 547; Post v. Berry, 8 Cir., 175 F. 564, 99 C.C.A. 186."

It was held in Sawyer v. Long, 1894, 86 Me. 541, 30 A. 111, that a mortgage on a stock of goods containing permission to sell the stock and replace sold articles with the proceeds of sale, and providing the mortgage should cover such replacements was valid and that such goods were covered by the mortgage.

Our statute on the recording of chattel mortgages, § 61-8-2, 1953 Compilation, does not make an unfiled chattel mortgage void as to general creditors; yet the seller here is appealing for relief in equity, and, as was done in the case of the mortgage in the Harnden case, we will, as a condition precedent to directing foreclosure of his mortgage on after-acquired goods, require him to waive such mortgage on any goods acquired by Claussen subsequent to execution of the mortgage but prior to its being filed for record on April 21, 1952, if any such goods went into the hands of the receiver.

The judgment will be reversed and the cause remanded to the District Court with instructions to set aside its former judgment and render a new one in accordance with the views herein expressed. It is so ordered.

COMPTON, C. J., and SADLER and KIKER, JJ., concur.

LUJAN, J., not participating.