UNITED STATES of America,
Appellant,

v.

M. Leroy EVANS and Flora J. Evans,
his wife, Appellees.

No. 5461.

United States Court of Appeals
Tenth Circuit.

June 11, 1957.

Alan S. Rosenthal, Washington, D. C.
(George Cochran Doub, Asst. Atty. Gen.,
Paul F. Larrazolo, U. S. Atty., Albuquer-
que, N. M., Samuel D. Slade and Lino A.
Graglia, Attys., Dept. of Justice, Wash-
ington, D. C., were with him on the
brief), for appellant.

Vance Mauney, Albuquerque, N. M.
(Simms, Modrall, Seymour, Sperling &
Roehl, Albuquerque N. M., were with
him on the brief), for appellees.

Before BRATTON, Chief Judge, and
MURRAH and PICKETT, Circuit Judg-
es.

BRATTON, Chief Judge.

The appeal in this case presents for determination conflicting claims of priority to a fund in the registry of the trial court. One of the rival claimants predicates its claim of priority upon duly filed chattel mortgages covering certain sheep, and the other claimants bottom their claim of priority upon a statutory lien upon the sheep.

The material facts are not in dispute. Stanley J. Proctor, hereinafter referred to as Proctor, was engaged in the conduct of farming and ranching operations in Torrance County, New Mexico. In 1945, Proctor obtained from the Farm Credit Administration, an agency of the United States, a seed and feed loan in the sum of $400, and he executed a promissory note therefor. In 1946, he obtained a like loan, for which he executed a promissory note. In 1953, Proctor obtained from the Farmers Home Administration, another agency of the United States, a loan of $3,740, for which he and his wife executed their promissory note. The proceeds of that loan were to be used in defraying operating expenses. On February 15, 1954, Proctor and his wife executed their promissory note in the sum of $23,700 payable to the United States. The note was given for a loan, and out of the proceeds thereof about $15,000 was to be used for the purchase of approximately 1,500 head of sheep. Proctor and his wife executed chattel mortgage to secure the four notes in the sum of $400, $400, $3,740, and $23,700, respectively. The mortgage was dated March 2, 1954, and was duly filed in the records of Torrance County on March 4. The mortgage covered 168 head of sheep, certain other personal property, and "All livestock, farm equipment, machinery, tools, and other farm personal property now owned or which may hereafter be acquired by the Mortgagor during the term this mortgage is effective * * *". On July 19, 1954, Proctor and his wife executed to the United States a second chattel mortgage. With minor exceptions not having any present material bearing, it was identical with the first mortgage; and it was duly filed in Torrance County on July 20. On August 1, 1954, Proctor leased from M. Leroy Evans and wife certain lands and premises in Valencia County, New Mexico, and agreed to pay therefor certain fixed rental. The lease provided among other things that crops already harvested should belong to the lessors, but that the lessee should be entitled to the growing crops and pasture on the premises from the date of the lease. About August 16, Proctor moved 588 ewes and 357 lambs from the ranch in Torrance County to the leased premises in Valencia County. On August 17, Proctor and wife executed a third chattel mortgage to secure the four promissory notes previously described, and it was duly filed in the records of Valencia County on August 23. That mortgage was substantially identical with the two previous ones. On August 31, 1954, Proctor purchased with the funds previously obtained from the United States 894 head of sheep at Carlsbad, New Mexico. These sheep were placed on the leased premises in Valencia County about September 1, and they were mingled with the sheep previously moved there. In February, 1955, Evans and wife instituted in the state court this action against Proctor and wife to recover unpaid rental under the lease. The United States was joined as a party defendant; and at its instance, the action was seasonably moved to the United States Court. After such removal, the sheep then remaining on the leased premises were sold for the sum of $6,750; and the proceeds of the sale were deposited in the registry of the court.

The judgment entered in the cause provided that Evans and his wife recover from Proctor the sum of $7,000, the amount of unpaid rental under the lease; provided that the United States recover from Proctor the sum of $1,129.36 and from Proctor and his wife the sum of $25,626.78, the amounts due upon the notes given to the United States and its agencies; and provided that the proceeds of the sale in the registry of the court be divided, giving to Evans and his wife

$4,230 and to the United States $2,520, to be properly credited upon the judgment. Apparently the division of the proceeds of the sale was based upon a determination that Evans and wife were entitled to priority under their statutory lien as to the proceeds attributable to the sheep purchased at Carlsbad and placed on the leased premises on September 1, and that the United States was entitled to priority under its chattel mortgages as to the proceeds attributable to the sheep moved from Torrance County to the leased premises in Valencia County. The United States appealed.

The United States urges the contention that it held prior right to all of the fund in the registry of the court and that the award of priority to Evans for a portion thereof constituted error. The three chattel mortgages given to the United States each contained a clear provision that the lien thereby created should cover all livestock subsequently acquired by the mortgagors during the existence of the mortgage. As between the immediate parties and as to subsequent creditors and purchasers with notice, such a provision is valid to create a lien upon after-acquired property, effective from the time of its acquisition. Smith & Ricker v. Hill Bros., 17 N.M. 415, 134 P. 243; Vorenberg Co. v. Bosserman, 17 N.M. 433, 130 P. 438; Morrison & Pardue v. Roberts-Dearborne Hardware Co., 36 N.M. 332, 14 P.2d 738; Joe Heaston Tractor & Implement Co. v. Claussen, 59 N.M. 486, 287 P.2d 57; Howell v. War Finance Corp., 9 Cir., 71 F.2d 237; Pearson v. Rapstine, 5 Cir., 203 F.2d 313; Lowden Savings Bank v. Zeller, 196 Iowa 1205, 194 N.W. 966; First National Bank of Lemmon v. Simpson, 66 S.D. 197, 280 N.W. 873; Mason City Production Credit Association v. Sig Ellingson & Co., 205 Minn. 537, 286 N.W. 713, certiorari denied 308 U.S. 599, 60 S.Ct. 130, 84 L.Ed. 501; Barron v. San Angelo National Bank, Tex.Civ.App., 138 S.W. 142. By virtue of the after-acquired property provision in each of the three chattel mortgages, the lien attached to the subsequently acquired sheep immediately upon their acquisition by Proctor and it existed at the time such sheep were placed upon the leased premises.

Section 61–3–5, N.M.S.A.1953, creates an agisters lien for pasturage furnished for livestock of others. But the statute expressly provides that the lien thereby created shall not take precedence over a prior filed and recorded chattel mortgage unless the holder of the mortgage shall so consent in writing. The statute thus accomplishes the dual result of creating an agisters lien upon livestock and of subordinating such lien to a prior filed or recorded chattel mortgage unless the holder of the mortgage expressly consents otherwise in writing. There is no need to explore the question whether Evans had an agisters lien under the statute. Assuming without deciding that he had such a lien upon the sheep for the unpaid rental due, it was subordinate in priority to that of the chattel mortgage lien of the United States. Pacific National Agricultural Credit Corp. v. Hagerman, 40 N.M. 116, 55 P.2d 667.

Section 61–6—1, N.M.S.A.1953, gives to a landlord leasing or renting agricultural lands a preference lien upon animals, tools, and other property furnished by the landlord to the tenant, and upon the crops raised on the premises, for any rent that may become due. At the time Proctor took possession of the leased premises, some alfalfa grown thereon had been recently harvested and some crops were then growing. Some of the alfalfa and the produce of the growing crops were fed to the sheep. The crops raised on the premises were subject to a landlord's lien, and the crops were fed to the sheep. But there is nothing in the statute which indicates persuasively a legislative intent to give to a landlord's lien upon crops grown on leased or rented premises and fed to livestock belonging to the tenant priority over and above a chattel mortgage lien covering the livestock at the time the tenant brought such livestock onto the leased premises.

The judgment is reversed and the cause is remanded with directions to enter judgment providing among other things that the entire fund in the registry of the court be paid to the United States and be applied as a credit upon the indebtedness due the United States.