# FIRST NATIONAL BANK OF MISSOULA, RESPONDENT, *v.* MARLOWE, EXECUTOR,· ET AL., APPELLANTS.

(No. 5,536.)

(Submitted September 20, 1924.  Decided November 10, 1924.)

[230 Pac. 374.]

*Mortgages—Foreclosure—Conditional Sale Contracts—Promissory Notes — Equity—Findings—Record—Absence of Evidence—Presumptions.*

Conditional Sale Contract—Definition.
1.  A "conditional sale" is one where possession is delivered to the buyer but the seller retains title until some condition is performed, usually the payment of the purchase price.

Same—Breach by Vendee—Remedies of Vendor.
2.  Upon a default by the buyer under a conditional sale contract, the seller may treat the contract as abrogated and retake the property; treat the contract as·existing but broken by the buyer, and maintain an action for damages occasioned by the breach, or waive the breach and insist upon payment of the purchase price.

Same—Rights and Liabilities—Intention of Parties Determinative.
3.  As in the case of any other contract, the rights and liabilities of the parties to a conditional sale contract must be determined by their intention deducible from the terms employed therein, considered in its entirety.

Same—Breach by Vendee—Sale of Property by Vendor—Deficiency Recoverable.
4.  A provision in a promissory note (treated as a conditional sale contract) that upon breach by the maker the payee might treat the sale of the chattels (automobiles) as absolute, retake and sell them, applying the net proceeds upon the note, and if such proceeds were insufficient to discharge the debt, the maker to pay the deficiency, may properly be enforced under section 7597, Revised Codes, and does not contravene public policy.

Same—Possession Delivered to Vendee—Remedy of Vendor—Statute.
5.  Section 7599, Revised Codes, providing that the vendor on breach of a conditional sale contract by the vendee may rescind the contract, or enforce his lien for the purchase price, applies only where the possession of the property is retained throughout by the vendor, hence has no application where possession was immediately delivered to the vendee.

Promissory Notes—Held in Effect Chattel Mortgages.
6.  Under the rule that it is not the form of an instrument but the purpose of the parties executing it which determines its legal

---

. 1.  What amounts to a conditional sale, see notes in 46 Am. St. Rep. 295; 94 Am. St. Rep. 234; 17 A. L. R. 1421.
5.  Election of remedies on breach of contract of conditional sale, see notes in 1 Ann. Cas. 268; 16 Ann. Cas. 1057; Ann. Cas. 1917D, 464.
6.  Clause authorizing vendor to retake and sell goods as determining whether contract is conditional sale or chattel mortgage, see notes in 3 Ann. Cas. 639; Ann. Cas. 1912C, 361.

effect, *held* that a promissory note delivered by an automobile
dealer to a bank for the purpose of procuring funds to enable
him to get possession of a shipment of cars, which note provided
that title to the cars should remain in the bank until the obliga-
tion was fully paid, was not a conditional sale contract but in
effect a chattel mortgage, entitling the bank to recover a defi-
ciency remaining after the sale of the cars and application of
the proceeds on the note.

Conditional Sale Contract—Essentials.

7.  To constitute a transaction a conditional sale contract, the
vendor must have been the actual owner of the chattel, and the
sale must have been *bona fide* and to a *bona fide* purchaser.

Mortgages—Parties may Agree to Make Them Security for Future
Loans.

8.  The parties to a mortgage originally intended to secure a
particular debt may later agree in writing that, as between them-
selves, it shall be security for the payment of a different debt
or future loans.

Same—Subsequent Instruments Making Mortgage Part by Reference—
Effect.

9.  Where, after the execution of a real estate mortgage, the
parties executed other instruments which provided by reference
to the mortgage that it should also be security for loans thereafter
made, the effect of the references was to incorporate in each of
the later instruments making the reference the document to which
reference was made, to-wit, the mortgage, and to enlarge its scope,
and therefore payment of a balance due on the subsequent in-
struments could properly be enforced by decree of foreclosure
against the property described in the mortgage.

Same—Expiration of Mortgage—Failure of Record to Show—Presump-
tion on Appeal.

10.  Where the record on appeal in a foreclosure suit was silent
as to when the indebtedness secured by the mortgage became due
or that a debt secured by it and a subsequent instrument of which
the mortgage had been made a part by reference, had been paid,
the finding that plaintiff mortgagee was entitled to a decree will
be presumed supported by the evidence (see par. 11), rendering
the contention of appellant that the mortgage had expired under
section 8257, Revised Codes, and that payment of the amount due
on the latter instrument had been made, untenable.

Findings—Absence of Evidence from Record—Presumption.

11.  On appeal in an equity case every finding made by the trial
court is presumed to be supported by the evidence, where the
record does not contain any of the evidence introduced.

*Appeal from District Court, Missoula County, in the Fourth
Judicial District; Joseph R. Jackson, a Judge of the Second
District, presiding.*

ACTION by the First National Bank of Missoula against
Thomas N. Marlowe, as executor of the estate of T. H. Thi-
bodeau, deceased, and others.  Judgment for plaintiff and de-
fendants appeal.  Affirmed.

*Messrs. Russell, Madeen & Clarke* and *Mr. Thos. N. Marlowe,* for Appellants, submitted a brief; *Mr. Charles A. Russell* argued the cause orally.

A party may not maintain an action for recovery of an unpaid balance under a contract of sale note reserving and retaining title in himself with the right of election to either repossess and sell the property or affirm the sale and sue for an unpaid balance when he has exercised his election to and has in fact repossessed and sold the property. It is the contention of appellants that plaintiff having voluntarily assumed the relation of conditional sales vendor, reserving and retaining title in itself, the legal consequences consisting of 'the rights and liabilities implied by law are the following: When in a conditional sale contract or note absolute title is reserved and retained in vendor, a retaking of the property by vendor is inconsistent with an action to recover the debt and constitutes an election to disaffirm the sale, especially is this so when as in this case the contract itself provides, first, that the vendor may retake the property, or as provided in the last paragraph it may "at its option waive the right to retake possession, and in lieu thereof may elect to treat said sale as absolute  *  *  *  vest the title in purchaser" and proceed to collect by suit. Two inconsistent courses, or three, being open to vendor, it must, and in this case did, elect which it would pursue, and having elected one (to retake the property) it is barred from pursuing the other. (35 Cyc. 659; *Bennett Bros. Co.* v. *Tam,* 24 Mont. 457, 62 Pac. 780; *Van Allen* v. *Francis,* 123 Cal. 474, 56 Pac. 339; *Madison River Livestock Co.* v. *Osler,* 39 Mont. 244, 133 Am. St. Rep. 558, 102 Pac. 325; *Manson* v. *Dayton,* 153 Fed. 258, 82 C. C. A. 588; *Harris* v. *Moreland Motor Truck Co.,* 279 Fed. 542, 543; *Endicott* v. *Digerness,* 103 Or. 555, 205 Pac. 975; *Harter* v. *Delno,* 49 Cal. App. 729, 194 Pac. 300; *Boas* v. *Knewing,* 175 Cal. 226, L. R. A. 1917F, 462, 165 Pac. 690–692; *Jordan* v. *Peeke,* 103

Wash. 94, 173 Pac. 726; *Galbreath* v. *Mayo,* 70 Okl. 252, 174 Pac. 517; *Shipley Construction & Supply Co.* v. *Magier,* 165 App. Div. 866, 150 N. Y. Supp. 969; *Id.,* 221 N. Y. 679, 117 N. E. 1084; *Campbell Printing Press Co.* v. *Hickok,* 140 Pa. St. 290, 21 Atl. 362; *Atkinson* v. *Japink,* 186 Mich. 335, 152 N. W. 1079; *Venable* v. *Young,* 137 Ga. 375, 73 S. E. 633; *Rice* v. *Hampton,* 106 S. C. 237, 91 S. E. 5.)

*Mr. Walter L. Pope* and *Mr. Clark T. Brown,* for Respondent, submitted a brief; *Mr. Pope* argued the cause orally.

The courts uniformly hold that contracts similar to the one here involved will be enforced in the same manner as any other contract or provision that is not illegal or contrary to the statutes. In each of the cases cited below it is to be noted the contract contained a provision the same or similar to the one in the notes in this case. In each of the cases the court sustained the provision. (*Lindsay Bros. Co.* v. *Montgomery,* 68 Mont. 294, 216 Pac. 795; *Minneapolis Threshing Mach. Co.* v. *Nash,* 103 Kan. 871, 176 Pac. 628; *Muncy* v. *Brain,* 158 Cal. 300, 110 Pac. 945; *Miller-Cahoon Co.* v. *Lawrence,* 31 Idaho, 704, 176 Pac. 774; *First Nat. Bank* v. *Yocum,* 96 Or. 438, 189 Pac. 220; *Lumbar* v. *Janzen,* 112 Kan. 197, 210 Pac. 186; *Norman* v. *Meeker,* 91 Wash. 534, Ann. Cas. 1917D, 462, 158 Pac. 78; *Keeler* v. *Goodman,* 296 Fed. 909; *Harkness* v. *Russell,* 118 U. S. 663, 30 L. Ed. 285, 7 Sup. Ct. Rep. 51 [see, also, Rose's U. S. Notes]; *Ballinger* v. *West Pub. Co.,* 44 App. D. C. 49; *Id.,* 239 U. S. 646, 60 L. Ed. 484, 36 Sup. Ct. Rep. 167 [see, also, Rose's U. S. Notes]; *Swain* v. *Schild,* 66 Ind. App. 156, 117 N. E. 933; *Continental Guaranty Corp.* v. *People's Bus Line* (Del.), 117 Atl. 275; *Rudolph Wurlitzer Co.* v. *Mandarin Co.,* 178 Wis. 785, 188 N. W. 639; *Daniels* v. *I. A. Thornton & Co.,* 28 Ga. App. 428, 111 S. E. 575; *Jefferson* v. *Sawyer,* 206 Ala. 73, 89 South. 168; *Rodgers* v. *Whitehead,* 127 Miss. 21, 89 South. 779.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In 1911 T. H. Thibodeau and Sue R. Thibodeau, his wife (now Sue R. O'Brien) executed and delivered to the First National Bank of Missoula a deed for certain real property situated in Missoula county, and later executed and delivered to the bank a correction deed. There is not anything before us to indicate what error was intended to be corrected by the second deed, and a further reference to it need not be made. The original deed was duly acknowledged and recorded and, though it purported to convey the property absolutely, it was in fact intended as security only; but for what debt or obligation does not appear. The Garden City Garage, a corporation of which Thibodeau and wife were directors and the principal stockholders, became indebted to the bank, and later Thibodeau and wife sold their interest in the garage to one Hugh Kennedy. This was the situation on February 28, 1919, when Thibodeau and wife executed and delivered to the bank an instrument in writing designated herein "Exhibit X," in form a letter addressed to the bank in which reference is made to the deeds, the book and page where the original deed is recorded, which declares that the bank held the property as security for the debts of the Garden City Garage, and contained the following provision: "It is further understood and declared that you hold said property in said deeds described in the same way and to the same extent as if said property had been duly and regularly mortgaged to secure said debts, obligations, claims and demands aforesaid."

Later Thibodeau and wife repurchased the business of the Garden City Garage and were conducting it and selling automobiles at retail when the transactions out of which this litigation arose were had. During August, September and October, 1919, wholesale dealers in automobiles shipped cars to the Garden City Garage, and in each instance sent to the bank the bill of lading with a draft attached, with instructions to de-

liver the bill of lading upon receiving the amount of the draft.
Upon the arrival of each shipment the Garden City Garage
borrowed from the bank the amount necessary to take up the
draft, and executed and delivered to the bank a note for the
amount of the loan. Five of these notes are involved in this
litigation. After two of them had been given, and on Septem-
ber 6, 1919, Thibodeau and wife executed and delivered to the
bank an instrument in writing, designated herein "Exhibit Z."
This instrument was written on the reverse side of Exhibit X
and reads as follows:

"In consideration of the sum of one dollar to them in hand
paid by the First National Bank of Missoula, it is hereby
agreed by the undersigned, that the property referred to in the
within letter is and shall be held by said bank as security for
the payment of the indebtedness referred to in said letter and
also as security for the payment to said bank of all debts and
obligations, either direct or indirect or to become due, or
which may be, at any time hereafter, be created from the Gar-
den City Garage, a corporation, or from the undersigned indi-
viduals to said bank and that said property referred to in said
letter shall be held by said The First National Bank of Mis-
soula as security for all present and future advances to and
indebtedness from said the Garden City Garage, and the under-
signed individuals. The term indebtedness includes all liabil-
ity, either direct or collateral, as maker, endorser, or other-
wise.

"Dated this 6th day of September, 1919.

                              "T. H. THIBODEAU.
                              "S. R. THIBODEAU."

On November 22, 1919, the bank took possession of some
of the automobiles and advertised them for sale at public auc-
tion, but before the date of sale arrived an agreement was
entered into by which the Garden City Garage was consti-
tuted the agent of the bank and authorized to sell the prop-
erty at private sale, paying over the proceeds to be credited
upon the notes. The automobiles were sold and the proceeds

applied according to the agreement, leaving a substantial amount unpaid. In the meantime T. H. Thibodeau died testate, leaving as his sole heirs at law and devisees Sue R. Thibodeau and Ray Thibodeau. Thomas N. Marlowe was appointed executor of the last will, qualified and has since acted in that capacity. The claim of the bank was duly presented for allowance against the estate of T. H. Thibodeau, but was rejected entirely, and this action was instituted to recover the balance remaining unpaid.

The trial court held that plaintiff is entitled to recover the balance due upon the notes; that the original deed and Exhibits X and Z constitute a mortgage which secures such balance; and that plaintiff is entitled to have the mortgage foreclosed. From the judgment defendants appeal and present for review two questions only: (1) What effect is to be given to each of the notes, and (2) what right, if any, did plaintiff secure by Exhibit Z when considered with Exhibit X and the original deed?

1. It is the contention of counsel for defendants that each note is a conditional sale contract, that plaintiff had an election of remedies, and, when it elected to retake the property and sell it, it abrogated the contract, hence may not maintain this action for any deficiency.

When we speak generally of a "conditional sale," we refer [1-3] to a sale in which possession is delivered to the buyer but the seller retains title until some condition is performed, usually the payment of the purchase price. (24 R. C. L. 440.) Under this simple character of contract, upon a default by the buyer, the seller (a) may treat the contract as abrogated and retake the property, or (b) he may retake the property, treat the contract as existing, but broken by the buyer, and maintain an action for damages occasioned by the breach, or (c) he may waive the breach and insist upon payment of the purchase price. (*Madison River Live Stock Co.* v. *Osler*, 39 Mont. 244, 133 Am. St. Rep. 558, 102 Pac. 325.) But there is no prescribed form for a conditional sale contract, and experience

demonstrates that the forms employed in actual practice are as varied as are the conceptions of the human mind, so that the rights and liabilities of the parties to a conditional sale contract, like their rights and liabilities under any other kind of contract, are to be determined by their intention as that intention is deducible from the terms employed when the particular contract in question is considered in its entirety.

In each of the notes before us the parties in express terms [4] declared that upon a breach by the maker, the bank might treat the sale as absolute and recover the purchase price, or it might retake the property, sell it and apply the net proceeds of sale upon the note, and if it chose the second alternative and the net proceeds realized were insufficient to discharge the debt represented by the note, the maker would "immediately pay any balance then remaining unpaid upon said note, as the agreed balance due as and for the use, rental and depreciation of said property up to the time of its taking as aforesaid." This last provision is not contrary to any statute, nor does it contravene any principle of public policy. Since the parties were competent to contract and did so freely, it is not the province of this court to act as guardian for the maker and say it shall not be bound to do what it agreed to do. Indeed, the provision is strictly in accordance with the rule of damages in such cases. (*Harkness* v. *Russell*, 118 U. S. 663, 30 L. Ed. 285, 7 Sup. Ct. Rep. 51 [see, also, Rose's U. S. Notes].)

Counsel for defendants direct our attention to court decisions from other jurisdictions which hold that, by taking possession of the property and selling it, the conditional vendor elects to treat the contract as at an end, hence may not recover for the balance remaining unpaid even though the conditional vendee agrees to pay such deficiency. But it is idle to cite those authorities, for whatever may be the rule in other states, our statute expressly recognizes the right of a conditional vendor to enforce a provision of this character. (Sec. 7597, Rev. Codes.)

Again, counsel for defendants insist that under the terms
[5]  of section 7599, Revised Codes, the bank had two reme-
dies only: rescission of the contract, or enforcement of the lien
for the purchase price, and, since these remedies are incon-
sistent, the election of the one precludes the enforcement of
the other.  But counsel overlook the particular provision of
that section which is the key to the interpretation of the sec-
tion as a whole.  The section applies only to the case where
possession of the property is retained throughout by the con-
ditional vendor.  The section is a *verbatim* copy of section 870
of Field's Civil Code, and an examination of the case of
*Fancher* v. *Goodman,* 29 Barb. (N. Y.) 315, cited by the
authors of the proposed New York Code, discloses the true
purpose and meaning of the section.

*Jordan* v. *Peek,* 103 Wash. 94, 173 Pac. 726, cited and relied
upon by counsel for defendants, is entirely in harmony with
the view which we have expressed.  In that case the Lind-
quists, conditional vendees, were constituted the agents of the
Jordans; hence possession by the Lindquists was the possession
of the Jordans, the conditional vendors.

The section cannot have any application here, for possession
of the automobiles in question was delivered immediately to the
Garden City Garage, the conditional vendee.

We direct attention to the fact that section 7597 was en-
acted after the decision in *Madison River Live Stock Co.* v.
*Osler* was rendered; and whereas section 7599 refers to a con-
ditional sale where possession of the property remains in the
vendor, section 7597 refers to the rights and liabilities of the
parties where possession is delivered to the vendee.

Upon the theory adopted by the defendants themselves, the
[6]  plaintiff was entitled to maintain this action.  But we
agree with the trial court that each of the notes is essentially
a chattel mortgage, rather than a conditional sale contract.
Plaintiff, a national banking corporation, was engaged in loan-
ing money—not buying and selling automobiles.  The Garden
City Garage was engaged in the automobile business, buying

from wholesale dealers and selling at retail. It was compelled to borrow from the bank the money necessary to take up the draft and secure the bill of lading and possession of the automobiles as each shipment arrived, and notwithstanding the recital in each note that "the title to which said property is now and shall remain in, and does not pass from, said the First National Bank of Missoula, until this obligation is fully satisfied," it is perfectly apparent, as the trial court found, that, except as a mere legal fiction, the parties never intended that the bank should have title absolutely, but only that the automobiles should stand as security for the repayment of the loan. (*Charavay* v. *York Silk Mfg. Co.* (C. C.), 170 Fed. 819; *Lyon* v. *Nourse,* 104 Wash. 309, 176 Pac. 359.) To constitute [7] the transaction a conditional sale, the bank must have been the actual owner of the automobiles and must have made a *bona fide* sale of them to a *bona fide* purchaser (*Payne* v. *Parker,* 95 Miss. 375, 48 South. 835; 11 C. J. 415), but that is not this case. The consideration for each note was the money loaned by the bank, not the sale of the automobiles described in the note. It is not the form of the instrument, but the purpose of the parties executing it, which determines its legal effect. The fact that the Garden City Garage bound itself to pay the full amount indicated by each note even after a sale of the property, and the application of the proceeds, can be reconciled only with the theory that security was intended. Hence irrespective of the form of the note, it must be held to evidence the intention of the parties that the automobiles should stand hypothecated for the payment of the debt; in other words, that it was in fact a chattel mortgage. (19 R. C. L. 244; *Murray* v. *Butte-Monitor Tunnel Min. Co.,* 41 Mont. 449, 110 Pac. 497, 112 Pac. 1132; *Crone* v. *Occident Elevator Co.,* 70 Mont. 211, 224 Pac. 659.) Under this view the right of the bank to recover the balance remaining unpaid after a sale of the mortgaged property and application of the proceeds is not open to question.

2. It is next contended that even though the bank may sue [8, 9] for and recover the balance due upon these notes, it may not enforce payment by decree of foreclosure against the real property described in the original deed of 1911. Counsel for defendants urge many objections to the sufficiency of Exhibit Z as a mortgage, and for the purposes of this appeal we might concede that every objection is well founded, and still the result would not be affected, for the objections are all founded upon the erroneous theory that Exhibit Z constitutes the mortgage which is here sought to be foreclosed. Bearing in mind that the original deed, though absolute in form, was intended only as security for the performance of an obligation, it constituted a mortgage upon the real property as fully and effectively as though it had been in form a mortgage executed with the utmost exactness and in strict conformity with the statutory provisions relating to mortgages of real property, and ''once a mortgage, always a mortgage.'' The effect of Exhibit X was to enlarge the scope of that mortgage, by declaring that it should be security for the payment of debts other than those in existence at the time the original deed was executed. Likewise the effect of Exhibit Z was to enlarge the scope additionally so as to include the debts represented by the notes involved herein. It is too well settled to admit of serious controversy that the parties to a mortgage originally intended to secure a particular debt, may later agree in writing that, as between themselves, it shall be security for the payment of a different debt or future advances. (1 Jones on Mortgages, 7th ed., secs. 360, 1079; *Huntington* v. *Kneeland,* 102 App. Div. 284, 92 N. Y. Supp. 944, affirmed on appeal, 187 N. Y. 563, 80 N. E. 1111; *Wylly* v. *Screven,* 98 Ga. 213, 25 S. E. 435; *Bank* v. *Reese,* 156 Ga. 652, 119 S. E. 610; *Kapalczynski* v. *Sitniski,* 91 N. J. Eq. 524, 111 Atl. 24; 27 Cyc. 1074.)

When Exhibit X was executed, and likewise when Exhibit Z was written, the legal title to the property in controversy was in the bank, but held as security only, and no reason can be

suggested why the parties could not enter into each of these subsequent agreements that the title, though conveyed, as security for one debt or for the fulfillment of one obligation, should stand, as between themselves, as security for the other debts mentioned in these respective exhibits; in other words, the original instrument, though in form a deed, was in fact a mortgage and is the mortgage now sought to be foreclosed. Exhibits X and Z are merely written agreements by the terms of which the mortgage was made to secure debts other than those originally intended to be secured, including the particular debts represented by the notes in question, and each of these exhibits is ample for the purpose intended. Exhibit X refers to the date of the original deed and to the book and page of the public records where it is recorded, and Exhibit Z refers to Exhibit X. The effect of the reference in each instrument is to incorporate in the instrument which makes the reference, the document to which reference is made.

But it is urged: (a) That the original deed, considered as [10] a mortgage, had expired prior to the time Exhibit Z was executed; and (b) that the debts secured by the deed and Exhibit X had been paid prior to the execution of Exhibit Z. Section 8267, Revised Codes, provides that a mortgage of real property duly executed and recorded is good and valid as against the creditors of the mortgagor or owner of the land, or subsequent purchasers or encumbrancers from the date it is recorded *until eight years after the maturity of the entire debt or obligation secured,* and no longer, unless extended in the manner therein indicated. The section has been construed by this court in *Berkin* v. *Healy,* 52 Mont. 398, 158 Pac. 1020, and *Morrison* v. *Farmers & Traders' State Bank,* 70 Mont. 146, 225 Pac. 123. The statute, however, has no application to the facts presented by this record, since there is not anything before us to indicate when the indebtedness secured by the original deed became due or that the debt secured by the original deed and Exhibit X had been paid; on the contrary, Exhibit Z recites that the land should be held

as security for the payment of the debts mentioned in Exhibit X as well as the debts referred to in Exhibit Z itself. The [11] record does not contain any of the evidence introduced upon the trial of this case; hence every finding made by the trial court is presumed to be supported by the evidence (*Mouat* v. *Minneapolis M. & S. Co.*, 68 Mont. 253, 217 Pac. 342), and it is to be borne in mind that no rights of third parties are involved in this litigation, but that the action is essentially one between the original parties to the transactions.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES RANKIN and STARK concur.