WISCONSIN CHAIR COMPANY, Appellee, v. H. BLUECHEL et al., Appellants.

No. 41529.

FEBRUARY 14, 1933.

REHEARING DENIED JUNE 23, 1933.

718

J. C. Travis, and B. D. Silliman, for appellants.

Trewin, Simmons & Trewin, for appellee.

MITCHELL, J.—The defendants having perfected their appeal first, they are designated in this opinion as the appellants, and the plaintiff as the appellee.

On the 2d day of May, 1929, the appellee filed in the office of the clerk of the district court of Linn county, Iowa, a petition in equity praying for the foreclosure of a conditional sales contract, and that the property be sold at special execution and the proceeds thereof used for the partial satisfaction of the appellee's claim, and that the appellee have judgment in rem against the said property in the sum of $2,632.43, and costs. There was attached to the appellee's petition a copy of the conditional sales contract. The material part of the conditional sales contract which is in controversy here is as follows:

"That the title to all of said seating and merchandise and every part thereof, together with the right to possession thereof, shall remain in you until full payment therefor in cash shall have been made as herein provided.

"And we further agree that in the event of our failing to make payment or settlement of the full purchase price, or of any installment thereof, as herein stipulated, or to pay at maturity any note given in full, or part evidence thereof, you may at your election, without demand upon or notice to us, take possession of said property, in which event you may consider all payments which may have

been made by us prior to such retaking as payments made for the use, wear and tear of said property, and upon the final vesting of the possession of said property in you all further obligation on our part hereunder shall cease, and any notes given by us evidencing any part of the purchase price, and which at that time may be unpaid shall be cancelled and this contract dissolved. Or, in the event of any default on our part as aforesaid, you may at your election declare the entire unpaid balance of the purchase price due and payable, and upon the retaking of said property, and upon notice to us of such election, sell said property at public or private sale, but without further notice to us, and apply the proceeds of such sale, first in payment of all expense and costs of such retaking and selling, and the balance, if any, together with all payments which may have been theretofore made by us, upon the purchase price of said property, paying to us the surplus, if any, and should any deficiency then exist between the purchase price of said property herein agreed by us to be paid and the net amount so received by you, less the expense and cost of retaking and selling, we agree to pay such deficiency; but under no circumstances shall the title to or right to possession of said property become vested in us hereunder unless the full purchase price thereof is paid prior to any retaking by you or said property as herein provided."

On the 27th day of December, 1929, plaintiff filed an amendment to its petition praying for personal judgment against H. Bluechel and J. P. Lannan, in the amount stated in the original petition, with interest thereon at the rate provided in said note, and costs of suit; for a special execution for the sale of the said property, and that a general execution issue against all the defendants for any deficiency. The appellants Bluechel and Lannan filed answers admitting the execution and delivery of the conditional sales contract and the notes, and pleading a claimed novation under which the appellants were released from any liability, and denying each and every other allegation of the petition. There was a hearing had by the court, evidence offered, and the cause submitted on December 15, 1930, and on the 20th day of March, 1931, the appellants secured permission of court to file a supplemental answer, in which the appellants set up as a defense that on the 14th day of April, 1930, the attorney for the appellee, H. R. Trewin, purchased said chairs at a tax sale; that Trewin purchased them as attorney and agent for the appellee, and it was, in fact, appellee's purchase; that

by such conduct the appellee has converted said chairs and has elected to become and is bound by the provisions of said conditional sales contract, which provides that "you (appellee) may at your election, without demand upon or notice to us, take possession of said property, in which event you may consider all payment which may have been made by us prior to such retaking as payment made for the use, wear and tear of said property, and upon the final vesting of the possession of said property in you all further obligation on our part of the purchase price and which at that time may be unpaid shall be cancelled and this contract dissolved," which discharges these appellants and each of them from any and all liability under the said contract, and appellee is estopped, barred, and has waived all right to any and all of the relief prayed for in appellee's petition.

The theater chairs which are the principal subject of this controversy were installed in a motion picture theater located in Cedar Rapids, Iowa, and owned by the appellant, Blanche E. Wilson, and generally known as the Isis Theater. The Frank Amusement Company, Inc., of Waterloo, Iowa, operated the theater for several years prior to January 16, 1928. On the 23d day of January, 1928, a receiver was appointed for that company, and the equipment and property, including the lease, were transferred to the appellants, a co-partnership, who assumed all the obligations of the lease, and proceeded to operate the theater. On July 9, 1928, the appellants entered into a conditional sales contract for the purchase from the appellee of 629 new chairs to be installed in said theater for a total consideration of $4,245.75, $1,100 of which was to be paid in cash, and the balance of $3,145.75 was evidenced by twenty-four promissory notes, four of which were paid, leaving twenty unpaid notes in the aggregate amount of $2,632.43, and upon which this action is instituted. These notes were signed by the appellants. The chairs purchased from the appellee were installed in the theater in July, 1928. In October, 1928, the lease and the theater equipment were sold by the appellants to Victor R. Smith & Sons, who assumed the payment of the notes and the appellants' obligations under the lease, and thereupon the appellants ceased to operate the theater. Smith & Sons continued to operate the theater until December 13, 1928, when they sold the lease and the property to Kile R. Martin, who took possession and operated the theater until December 24, 1928, when it was closed and abandoned. The notes maturing in December,

1928, January, February, March, and April, 1929, not having been paid, the appellee, in accordance with the terms of the conditional sales contract and the notes, elected to declare the entire unpaid balance to be immediately due and payable, and this action was commenced in equity in May, 1929. The landlord was made a party, for the reason that she claimed that her landlord's lien upon the chairs was prior to the appellee's lien. On April 14, 1930, the theater chairs in question were sold at a tax sale by the Linn county tax collector. The tax for which the chairs were sold amounted to $82.25 and penalty. It was assessed by the proper officers of Linn county in the year 1928, and on account of the ownership on that date of the Frank Amusement Company of the theater equipment, furniture, and fixtures then located in the Isis Theater. At the time the tax was levied the chairs in question in the case at bar were in the theater. They were likewise there at the time the tax became due on January 1, 1929. Later in January, the chairs and other equipment were moved to storage, where they were at the time they were seized by the tax collector for the tax in question. At the time these chairs were seized by the tax collector, this foreclosure action against the chairs was pending, and there was also pending an action by the landlord to foreclose her lien upon all the equipment, including these chairs. Attorneys representing the appellee informed the appellee of the approaching tax sale, and suggested that appellee should advance the money necessary to pay the taxes and add it to its lien and claim. The appellee did not advance any money, either to pay the taxes or to purchase the property at the tax sale. At the time of the tax sale the property was bid in by Mr. Trewin, a member of the firm of attorneys who represented the appellee, and by Mr. Shuttleworth, an attorney, who represented the landlord. Each of the attorneys personally advanced one-half of the costs of the tax sale. Trewin advised his client, the appellee herein, fully regarding the purchase, and offered to give the appellee the benefit of his arrangement with Shuttleworth if appellee desired to take advantage of it, provided Trewin's fees and expenses arising out of the purchase and care of the property should be paid. The appellee advised Trewin that it would make some satisfactory arrangement with him in regard to the chairs. The chairs were sold in January, 1930, while the case was still pending. Trewin settled with Shuttleworth and paid Shuttleworth $100 for releasing all of Shuttleworth's rights as far as the chairs were concerned. Thereafter,

in the month of January, Trewin sold part of the chairs. Before he made the sale Trewin advised appellee of the pending sale, and Trewin was advised by wire that he had appellee's permission to make the sale. The balance of the chairs were sold by Trewin later on. As a result of these sales, Trewin had in his hands, after deducting expenses, a balance of $943.81. About the time the chairs were sold by Trewin the tax collector of Linn county levied another distress warrant against the theater equipment, for other taxes which in the meantime had become delinquent and were unpaid, in the amount of approximately $100. In order to secure the release of the chairs from the tax collector, it was agreed by Trewin to withhold $110 of the purchase price to meet this claim, if it should be established that the chairs were subject to the additional lien. The appellants claim and argue with a great deal of force that the purchase by Trewin was in fact a purchase by the appellee, and that the appellee, claiming independent title to the chairs through the tax sale proceedings, and reselling the chairs on its own account at private sale and refusing to account for the proceeds, has retaken the property as provided by the conditions of the conditional sales contract, which required that if the appellee elected, in case of failure on the part of the appellants to make the payments required by the conditional sales contract, the appellee may at its "election, without demand upon or notice to us, take possession of said property, in which event you may consider all payment which may have been made by us prior to such·retaking as payments made for the use, wear and tear of said property, and upon the final vesting of the possession of said property in you all further obligation on our part of the purchase price and which at that time may be unpaid shall be cancelled and this contract dissolved."

The record clearly shows that the appellee at no time elected to proceed under the paragraph of the conditional sales contract above set out. At the time the appellee filed its petition in 1929, it stated in the petition as follows:

"That by the terms of said contract and by virtue of the default of the defendants in making the payment of said notes which have matured, the plaintiff has elected to and does hereby declare the entire balance due."

The appellants argue that the appellee's purchase at the tax sale amounted merely to a payment of taxes, that a mortgagee can

neither add to nor strengthen his title, either by purchase at tax sale or by purchasing a certificate of tax sale from another; such transaction, in equity, amounting to no more than the payment of taxes for the purpose of preserving his security. Both the appellants and the appellee in their briefs state that this is the first time that they have been able to find, from a careful search of the authorities, that this question has been before this court.

We do not believe it is necessary, in order to decide the case at bar, for us to decide the question above referred to. In the case at bar the conditional sales contract which was sued upon gave the appellee the right to retake the property and to resell it, and to hold the appellant for the deficiency judgment, crediting the net proceeds of the sale on the purchase price. The provision in question is as follows:

"And we further agree that in the event of our failing to make payment or settlement of the full purchase price, or of any installment thereof, as herein stipulated, or to pay at maturity any note given in full, or part evidence thereof, you may at your election, without demand upon or notice to us, take possession of said property, in which event you may consider all payments which may have been made by us prior to such retaking as payments made for the use, wear and tear of said property, and upon the final vesting of the possession of said property in you all further obligation on our part hereunder shall cease, and any notes given by us evidencing any part of the purchase price, and which at that time may be unpaid shall be cancelled and this contract dissolved. Or, in the event of any default on our part as aforesaid, you may at your election declare the entire unpaid balance of the purchase price due and payable, and upon the retaking of said property, and upon notice to us of such election, sell said property at public or private sale, but without further notice to us, and apply the proceeds of such sale, first in payment of all expense and costs of such retaking and selling, and the balance, if any, together with all payments which may have been theretofore made by us, upon the purchase price of such property, paying to us the surplus, if any, and should any deficiency then exist between the purchase price of said property herein agreed by us to be paid and the net amount so received by you, less the expense and cost of retaking and selling, we agree to pay such deficiency; but under no circumstances shall the title to or right to possession of said property become vested in us hereunder unless

the full purchase price thereof is paid prior to any retaking by you of said property as herein provided."

In the above-quoted portion of the conditional sales contract, the word "or" is used, and the appellee is given the right to make its choice as to which of the two remedies provided in the conditional sales contract it desires to pursue.

The notice referred to in the above-quoted portion is of the election to declare the entire unpaid balance to be due and payable. It has no reference to a notice of sale. It says upon notice of "such election". The only election referred to in the paragraph is the election to declare the unpaid balance due and payable. In the petition which the appellee filed in this case on May 2, 1929, the appellee gave notice to the appellants that it elected to declare the entire balance due on account of default. This was over a year before the sale of the chairs, and that was the only notice required by the provision above quoted. After the debt had been declared to be due and payable, and while the purchaser was in default, the provision as a whole gave the seller the right "without further notice, to take possession of the property and sell it at private sale, and apply the proceeds upon the purchase price, and hold the purchaser for the deficiency". Under the provisions of this conditional sales contract the appellee had at all times the right to hold the appellants liable for the deficiency. This court, in the case of Murray v. McDonald, reported in 203 Iowa 418, 212 N. W. 711, 712, 56 A. L. R. 233, said:

"The question then is: Were the remedies which were open to the defendant vendor to enforce his rights consistent and concurrent remedies, or were they inconsistent in character? There is no prescribed form for a conditional sale contract. The rights and liabilities of the parties thereto, as in any other kind of a contract, must be determined by the language used and the intention deducible from the terms employed in the contract. As said in First Nat. Bank v. Marlowe, 71 Mont. 461, 468, 230 P. 374:

" 'Since the parties were competent to contract and did so freely, it is not the province of this court to act as guardian for the maker and say it shall not be bound to do what it agreed to do.' "

The institution and the continued prosecution of this suit shows that the appellee never for an instant abandoned that intention. It seems to us that the most the appellants can claim is a credit

for the net amount received for the sale of the chairs, which is the relief the lower court granted. The appellee in its appeal complains of the ruling of the lower court in crediting the net amount received from the sale of the chairs on the judgment. Mr. Trewin, acting as attorney for the appellee, informed it of the tax sale. It is true that it did not advance the money, but Mr. Trewin immediately informed it and offered the appellee the advantage which he secured, if any, by the purchase at the tax sale. The appellee informed him that it would make satisfactory arrangements, and when the chairs were sold the appellee was first informed in regard to the sale and consented to the sale. It seems to us that Mr. Trewin was acting on behalf of the appellee, and that, under the conditional sales contract sued upon in this case, the appellee was bound to credit the amount received from the sale of these chairs upon the amount of indebtedness due by the appellants to the appellee.

Upon a careful reading of the record, we are convinced that the finding of the lower court is correct, and the judgment and decree of the lower court is hereby affirmed on both appeals.

All Justices concur.